FILED
COURT OF APPEALS
DIVISION II

2014 JUN 24 AM 9: 04

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Estate of: | No. 44244-2-II |
| DOROTHY METTLE, | UNPUBLISHED OPINION |
| Deceased. | |

BJORGEN, A.C.J. — Guy Mettle appeals the trial court's denial of various motions related to his challenge to the probate of his mother's will and the administration of her trust. Guy appealed portions of this case to our court before, and our opinion in that appeal resolved many of the issues he now raises against him. Among the new issues Guy now raises are claims that the trial court erred in denying his motions to compel discovery, denying his motion to recuse, denying his motion for indigency, and withdrawing his motion for an accounting and disclosure of billing information related to the trust. He also moves to recuse the judges that denied his first appeal. We affirm.

No. 44244-2-II

## FACTS

Dorothy Mettle executed a will devising all of her property to a trust benefitting her three sons, Guy, John, and Gregg Mettle.[1] Originally she designated Guy as her personal representative (PR), but later revoked this designation in favor of Gregg. Dorothy also designated Gregg as the trustee of the trust receiving her property after her death.

Dorothy died on December 10, 2002, and significant litigation over her will and the distribution of the trust's assets followed. When Gregg, as PR, moved to complete probate, Guy objected and moved for an accounting. Similarly, when Gregg moved to approve the accounting for the trust's activities between the years 2002 and 2008 as a first step to winding up the trust, Guy again objected and sought both an accounting and discovery related to the trust and estate's finances. Over Guy's objections, the trial court approved the final accounting for the estate and the interim accounting for the trust in 2008.

The 2008 approvals for the trust and estate accountings triggered Guy's first appeal to our court, which we decided in 2011. We resolved every issue Guy appealed against him, and awarded attorney fees to the trust and estate to be paid from Guy's distribution from the trust if he could not pay the award himself.

After filing the notice of appeal in 2008, Guy filed motions in the trial court to compel the production of documents, perpetuate testimony, and require the posting of a supersedeas bond. We refused to consider these issues on appeal given the timing of their filing, and the trial court ultimately denied all of these motions and an additional one asking the trial court judge to recuse himself.

---

[1] For simplicity's sake, we refer to members of the Mettle family by their first names. We intend no disrespect.

2

In 2010, Guy sought an order of indigency for purposes of appeal. Guy's motion alleged that Gregg had "stolen" his inheritance through "kidnapping, elder abuse, extortion, civil fraud, bank fraud, check fraud, and perjury." Clerk's Papers (CP) at 905. To support his claim of indigency, Guy submitted evidence that he received food stamps from the State of Ohio. The trial court denied Guy's motion without making any findings related to his financial status.

In 2011, Guy sought an accounting and attorney billing information related to the trust and estate and attorney fees for his pro se work in drafting the motion. At the hearing related to the motion, Guy acknowledged the PR and trustee had provided him with the information he sought. The trial court determined that events had rendered Guy's motion moot and entered an "Order Recognizing Guy Mettle's Withdrawal of his Motion for Accounting and Billing Information" over his objections. CP at 1185-86.

In 2012 Gregg sought judicial approval to wind up the trust. Gregg's petition sought approval of his final accounting; approval of fees incurred, including attorney fees; and the reduction of Guy's final distribution reflecting the award of fees and costs. The trial court approved Gregg's petition.

Guy then filed a second notice of appeal. This notice explicitly appealed several trial court orders we affirmed in our opinion resolving his first appeal. After we accepted review, Guy also filed a "Motion to Prevent the Repetition of 10 [Court of Appeals] Lies of Fact and to Recuse the Judges that Filed Those Lies." *In re Estate of Mettle*, No 44244-2-II (Wash. Ct. App. July 13, 2012). Our commissioner accepted this motion only to the extent that it sought recusal of the judges who heard Guy's first appeal and stayed a decision on recusal pending assignment

No. 44244-2-II

of the panel that would hear the present appeal.[2] July 23, 2013 Ruling by Commissioner

Schmidt, *In re Estate of Mettle*, No. 4244-2-II at 1 (Wash. Ct. App.).

ANALYSIS

Guy's brief raises 11 issues and nearly 100 assignments of error. Generally, these issues

and assignments of error include claims that the trial court erred in (1) denying Guy's attempts to

engage in discovery, (2) refusing to compel Gregg to make distributions and approving the

deduction of attorney fees awarded to the trust and estate from distributions to Guy, (3)

approving Gregg's administration of the trust and estate and his accountings for each, (4)

refusing to require the estate to post a supersedeas bond after approving a delay in a distribution,

(5) "forc[ing]" Guy to withdraw his motion to compel certain documents, (6) denying Guy's

motion for indigency, and (7) denying Guy's motion for recusal. Br. of Appellant at 73.

We review de novo the trial court's decisions regarding trust and estate matters, although

we defer to a trial court's factual findings. *See In re Riddell Testementary Trust*, 138 Wn. App.

485, 491-92, 157 P.3d 888 (2007); *In re Estate of Black*, 116 Wn. App. 476, 483, 66 P.3d 670

(2003). We review Guy's claims of error in the award of attorney fees for an abuse of discretion.

*Magana v. Hyundai Motor Am.*, 167 Wn.2d 570, 593, 220 P.3d 191 (2009). We also review the

trial court's denial of Guy's motion to recuse for an abuse of discretion. *West v. Wash. Ass'n of*

*County Officials*, 162 Wn. App. 120, 136, 252 P.3d 406 (2011).

We note also that the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A

RCW, gives the trial court "full and ample power and authority" to "administer and settle" all

---

[2] Judges Armstrong, Quinn-Brintnall, and Penoyar heard Guy's first appeal. Judges Armstrong and Quinn-Brintnall had left the bench by the time we heard Guy's second appeal, and Judge Penoyar retired soon after.

4

estate and trust matters. RCW 11.96A.020(1). Where TEDRA does not specifically authorize a trial court's actions, "the court nevertheless has full power and authority to proceed with such administration and settlement in any manner and way that to the court seems right and proper." RCW 11.96A.020(2). Bearing this in mind, we turn to the merits of Guy's claims.

## I. LAW OF THE CASE

Our first opinion in this case decided many of the issues Guy raises in this appeal in Gregg's favor. Gregg contends that either the law of the case doctrine or collateral estoppel precludes Guy from litigating these issues again. We agree.

The law of the case doctrine provides that "'questions determined on appeal, or which might have been determined had they been presented, will not again be considered on a subsequent appeal if there is no substantial change in the evidence at a second determination of the cause.'" *Folsom v. County of Spokane*, 111 Wn.2d 256, 263, 759 P.2d 1196 (1988) (quoting *Adamson v. Traylor*, 66 Wn.2d 338, 339, 402 P.2d 499 (1965)). Although application of the law of the case doctrine is discretionary, we generally will only reconsider an earlier opinion if a party demonstrates that it was "clearly erroneous." *Folsom*, 111 Wn.2d at 265-67; *Greene v. Rothschild*, 68 Wn.2d 1, 6, 414 P.2d 1013 (1966).

Application of the law of the case doctrine is warranted here. Guy's briefing simply re-raises many of the same issues he raised during his first appeal. He does not argue that we decided those issues in a clearly erroneous manner or provide analysis that might allow us to understand the basis of any error. He does not cite new evidence or any change in the law that might require a different outcome for his appeal. In the interest of judicial economy, we decline to reconsider the claims we have already rejected and therefore do not address any of Guy's

claims related to the accounting for or administration of the estate, the accounting for or administration of the trust between the years 2001 and 2008, the need for accountings where the trust and estate have engaged in no activity, discovery requests that we have already reviewed, bad faith by Gregg or the trust's or estate's counsel, removal of Gregg as PR or trustee, termination of representation by the trust's or estate's attorney, the refusal to award fees to Guy based on any of these matters, or the award of fees to the trust and estate based on Guy's litigation.

## II. DISCOVERY

Guy contends that the trial court erred in denying his motion to compel production of documents and perpetuate testimony related to Gregg's alleged concealment of estate assets. Because Guy does not meet the criteria for permitting discovery under TEDRA, we affirm the trial court.

Civil Rules 26-37 allow a party to engage in wide ranging discovery, including, among other methods, taking depositions or requiring other parties to produce documents. However, TEDRA restricts discovery in controversies involving trusts or estates. TEDRA provides that

> In all matters governed by this title, discovery shall be permitted only in the following matters:
>     (1) A judicial proceeding that places one or more specific issues in controversy that has been commenced under RCW 11.96A.100, in which case discovery shall be conducted in accordance with the superior court civil rules and applicable local rules; or
>     (2) A matter in which the court orders that discovery be permitted on a showing of good cause, in which case discovery shall be conducted in accordance with the superior court civil rules and applicable local rules unless otherwise limited by the order of the court.

RCW 11.96A.115. A "[m]atter" within the meaning of TEDRA includes "[t]he direction of a personal representative or trustee to do or abstain from doing any act in a fiduciary capacity" or

6

"[t]he determination of any question arising in the administration of an estate or trust . . . relating to . . . an accounting from a personal representative or trustee; or . . . the determination of fees for a personal representative or trustee." RCW 11.96A.030.

The discovery provisions of TEDRA bar Guy from compelling production of the documents he seeks. Guy is seeking information related to the accountings for the trust and estate, "matters" within the meaning of TEDRA's limits on discovery. Guy cannot obtain discovery under RCW 11.96A.115(1) because the record does not show that he "commenced" a judicial proceeding controverting specific issues as required by that provision. Nor can Guy obtain discovery under RCW 11.96A.115(2) as he cannot show good cause for such discovery. His motion to compel production of documents and to perpetuate testimony related to issues that both we and the trial court resolved against him. Because he failed to satisfy TEDRA's criteria for allowing discovery, the trial court did not err by denying his motion.

### III. DISTRIBUTIONS

Guy also appeals several orders denying his motions for distributions. Guy alleges that Gregg delayed distributing money to him in order to frustrate his ability to pursue his claims of wrongdoing on Gregg's part. We affirm the trial court's denial of these motions for two reasons.

First, Guy repeatedly, but incorrectly, alleges that Gregg violated statutory law and judicial orders by delaying distributing the assets of the trust. For statutory support, he cites RCW 11.48.010, which requires a PR to "settle the estate 'as rapidly and as quickly as possible, without sacrifice to the probate or nonprobate estate.'" Br. of Appellant at 67. Guy cannot claim this imposes a duty on Gregg as a trustee to make distributions as quickly as possible. As Guy repeatedly argues, the estate and the trust are separate entities. *See* RCW 11.12.010-.260 (wills);

RCW 11.48.010-.210 (PR); RCW 11.98.002-.930 (trusts and the trustee). The duty imposed by law on the PR does not transfer to the trustee simply because the same person, Gregg, holds both positions. Further, the judicial order Guy cites is the trial court's granting of Gregg's motion to make a distribution, an order which does not require a distribution in any particular timeframe. Guy does not show any violation of this order.

Second, the trial court had the authority to allow a delay in distributions given Guy's continued litigation. The trial court noted that Guy caused the delays in distribution that he now complains of with his appeals to this court. Guy's attempts to obtain equitable relief through an order to distribute assets required that he satisfy the requirements of equity. *See Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 814, 854 P.2d 1072 (1993) (injunctive relief is equitable). One requirement is that "those 'who come[] into equity must come with clean hands.'" *Columbia Cmty. Bank v. Newman Park, LLC*, 177 Wn.2d 566, 581, 304 P.3d 472 (2013) (quoting *Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc.*, 96 Wn.2d 939, 949, 640 P.2d 1051 (1982)) (alteration in original). The trial court found that Guy caused the delays in distributing trust assets with his litigation, and we defer to this finding. Guy lacked clean hands with regard to any delay and could not invoke the trial court's equitable powers to order distributions because of Gregg's ostensible delays.

## IV. SUPERSEDEAS

Guy next alleges that the trial court erred in denying his motion for a supersedeas bond. A supersedeas bond operates to stay execution on a judgment. *Ryan v. Plath*, 18 Wn.2d 839, 855-56, 140 P.2d 968 (1943); RAP 8.1(a). Guy points to no judgment entitling him to collect from the trust; indeed, he explicitly denies that his entitlement to a distribution from the trust

8

derives from a judgment. CP at 693 ("[t]he assets to be distributed to Guy Mettle do not result from a judgment, and Guy Mettle's inheritance is not reversible."). The trial court did not err in refusing to require a bond to stay execution of a nonexistent judgment.

## V. THE WITHDRAWAL OF GUY'S MOTION FOR AN ACCOUNTING

Guy next alleges the trial court erred by designating his motion for an accounting for the trust for 2010 and billing information for the trust and estate for 2008-2010 as withdrawn. We agree that the trial court erred in how it characterized its resolution of Guy's motion, but find the error did not prejudice Guy because the trustee had mooted the motion by disclosing the requested information.

At the hearing on his motion, Guy acknowledged that the trustee had provided him with the information about the administration of the trust and estate he sought with his motion. As a result, the trial court repeatedly referred to the motion as moot when deciding how to rule on it, ultimately entering the order "withdrawing" the motion over Guy's objections. CP at 1225-26.

Where the court "can no longer provide effective relief," a motion becomes moot. *See Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 99, 117 P.3d 1117 (2005); *see Ferguson Firm, PLLC v. Teller & Assoc., PLLC*, 178 Wn. App. 622, 630 n.4, 316 P.3d 509 (2013). Because Guy had the information he sought through the motion, the trial court could no longer provide effective relief, and his motion became moot. Assuming that the trial court erred in the nomenclature it used to dismiss the motion, it did not prejudice Guy with this error as dismissal was appropriate. *See Ferguson*, 178 Wn. App. at 630 n.4; *see also Price v. Price*, 174 Wn. App. 894, 902, 301 P.3d 486 (2013).

Guy argues that the motion was not moot because he sought attorney fees and the trial court could grant him relief in that form. A pro se litigant, however, may not obtain attorney fees subject to an exception not relevant here. *In re Marriage of Brown*, 159 Wn. App. 931, 938-39, 247 P.3d 466 (2011). Since Guy filed the motion pro se, he cannot obtain fees. The trial court could grant him no relief related to the motion and correctly dismissed it as moot.

## VI. INDIGENCY

Guy next contends that the trial court erred in denying his motion for an order of indigency, claiming that the court erred in not entering findings about his financial status in determining that he was not indigent, and in not recognizing that his appeal involved a constitutional right which entitled him to a fee waiver on appeal.[3] We agree that the court erred in not entering findings about his financial status, but find the error harmless as Guy had no constitutional or statutory right to public assistance with his appeal, meaning the trial court properly denied his motion for indigency.

There is no right to appeal in civil cases under either the Washington or federal constitutions. *Hous. Auth. v. Saylors*, 87 Wn.2d 732, 740-41, 557 P.2d 321 (1976); *Ortwein v. Schwab*, 410 U.S. 656, 660, 93 S. Ct. 1172, 35 L. Ed. 2d 572 (1973). However, once a state allows for appeals, it may not "arbitrarily depriv[e] a litigant of access to the appellate system" due to poverty. *In re Grove*, 127 Wn.2d 221, 239, 897 P.2d 1252 (1995). This principle requires the State to provide indigent litigants appointed counsel and funding for appellate fees in limited circumstances. *M.L.B. v. S.L.J.*, 519 U.S. 102, 113-16, 117 S. Ct. 555, 136 L. Ed. 2d 473 (1996);

---

[3] The only information related to Guy's financial status found in the record is that he receives food stamps from the state of Ohio and that he received a $200,000 distribution from the trust in 2004.

10

*Grove*, 127 Wn.2d at 240. First, a civil litigant may receive assistance in the form of appointed counsel or fee waivers where the legislature has provided for such assistance. The legislature possesses the power of the purse and may allocate funds to help those needing assistance in accessing the appellate system. *Grove*, 127 Wn.2d at 240; *Saylors*, 87 Wn.2d at 740. Second, a civil litigant may also receive assistance with appellate costs where a constitutional right requires such assistance. This constitutional right to assistance in civil cases is narrow and encompasses only those cases involving fundamental rights, specifically cases involving the appellant's physical liberty or "[c]hoices about marriage, family life, and the upbringing of children." *M.L.B.*, 519 U.S. at 116. Reflecting the limits of the right to public assistance in civil cases, our Supreme Court has held that

> there is no constitutional right to appeal at public expense in civil cases in which only property or financial interests are threatened. Where there is no constitutional or statutory right to counsel at public expense and where there is no constitutional or statutory right to a waiver of fees and payment of costs, there is no right, simply because of the fact of indigency, to appointment of counsel on appeal or to waiver of fees and payment of costs.

*Grove*, 127 Wn.2d at 240.

The scope of public assistance in civil appeals is in reflected in RAP 15.2, which governs motions for indigency and public assistance with appellate costs. RAP 15.2(a) provides that "[a] party seeking review in the Court of Appeals or the Supreme Court partially or wholly at public expense must move in the trial court for an order of indigency." As probate and trust matters do not fall within the enumerated list of cases covered by RAP 15.2(b)(1), RAP 15.2(c) controls Guy's appeal. It provides that

> [i]n cases not governed by subsection (b) of this rule, the trial court shall determine in written findings the indigency, if any, of the party seeking review. The party must demonstrate in the motion or the supporting affidavit that the

issues the party wants reviewed have probable merit and that the party has a constitutional or statutory right to review partially or wholly at public expense.

RAP 15.2(c).

Guy correctly argues that the trial court failed to make findings about his indigency or lack thereof when denying his motion. The error is, however, harmless, given that Guy could not have obtained review at public expense, because, as we discuss below, he lacked constitutional or statutory authorization for assistance with his appeal.

Guy does not have a statutory right to review at public expense. While Guy claims a right to public assistance under RCW 11.96A.200, that provision simply allows for an appeal in trust or estate matters; it does not provide a substantive right to public assistance. Guy offers no other code provision that might provide a right to public assistance, and research on the issue discloses none that does.

Nor does Guy have a constitutional right to public assistance. Guy's motion for indigency alleged that "[his] inheritance was stolen by the Personal Representative/Trustee, who converted it to his own use and retains it." CP at 905. Guy thus alleged a deprivation of property. Under *Grove*, Guy's allegation of property deprivation by Gregg did not entitle him, constitutionally, to review at public expense.

Guy nevertheless argues that the constitution requires public assistance for his appeal for two different reasons. First, he claims that inheritance is a fundamental right entitling him to public assistance in obtaining his distributions from the trust. He cites *In re Colbert's Estate*, 44 Mont. 259, 119 P. 791 (1911), and claims it supports his argument. As Gregg correctly notes, the passage Guy cites was a quote from the appellant's brief in Colbert's estate. The *Colbert* court stated that inheritance was, in fact, a statutory right, and only discussed the constitution in

the context of an equal protection challenge to a statute that disinherited nonresident aliens. *In re Colbert's Estate*, 44 Mont. 259; *see* RCW 11.04.015.

Guy also cites *Boddie v. Connecticut*, 401 U.S. 371, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971) and its progeny and claims that these cases show his entitlement to public assistance. These cases hold that where the State monopolizes the means to alter fundamental human relationships, it cannot deny an appellant access to the courts due to indigency. While Guy's appeal touches on family life, it does not involve a state monopoly on methods for altering fundamental human relationships. Instead, it is, as discussed above, simply a dispute about money. Guy cannot avail himself of the *Boddie* line of cases' mandatory waiver of appellate fees.[4]

The failure to allege a statutory or constitutional right to public assistance, as required by RAP 15.2(c), necessitated denial of Guy's motion for indigency, and we affirm the trial court's decision.

## VII. RECUSAL

Guy next argues that Judge Larkin erred in declining to recuse himself. Guy alleges that several of the trial court's rulings evidence bias against him. Again, we disagree and affirm the trial court's denial of his motion.

Considerations of due process, the appearance of fairness, and judicial ethics require impartial judges. *West*, 162 Wn. App. at 136-37. A judge who harbors bias against a party, or a

---

[4]Further, *Boddie* requires that the State monopolize the means to alter the liberty interest at issue. Even if Guy's right to receive inheritance were a fundamental liberty interest, parties need not pass assets through probate. *See Manary v. Anderson*, 176 Wn.2d 342, 353, 292 P.3d 96 (2013) (discussing nonprobate assets that pass through means other than wills). Guy's contention that Washington has monopolized probate is thus irrelevant.

13

judge whose impartiality might reasonably be questioned, must recuse her or himself from hearing a matter. *West*, 162 Wn. App. at 136-37. However, we begin with the presumption that a trial court acts "without bias or prejudice" and the party seeking recusal must "support the claim with evidence of the trial court's actual or potential bias." *West*, 162 Wn. App. at 136-37. We test whether a party's allegations overcome the presumption of impartiality by looking to whether a reasonable person who knew and understood all the relevant facts would believe the judge might have a bias against the party. *West*, 162 Wn. App. at 137.

Guy alleges that Judge Larkin demonstrated bias against him by denying motions that he made and by assessing fees against him. While a pattern of erroneously denying motions might indicate bias, trial court rulings "consistent with applicable law" show the opposite. *State v. Turner*, 143 Wn.2d 715, 728, 23 P.3d 499 (2001). We have already affirmed many of the rulings Guy alleges justify recusal, including the fee awards related to the trust and estate litigation through 2008, and our opinion here affirms the remainder. The trial court correctly applied the law, and we find no bias in its decision to do so. We find no abuse of the trial judge's discretion in his decision not to recuse himself.

VIII. MOTION TO RECUSE JUDGES ARMSTRONG, QUINN-BRINTNALL, AND PENOYAR

Finally, Guy filed a motion with our court "to prevent repetition of 10 [Court of Appeals] lies of fact and to recuse the judges that filed those lies." Spindle, Motion to Prevent Repetition, *supra*. Our commissioner denied the motion to prevent the repetition of lies as we do not recognize such motions, but he stayed the decision on the motion for recusal until the panel that would hear Guy's second appeal was determined. July 23, 2013 Ruling by Commissioner Schmidt, *In re Estate of Mettle*, No. 4244-2-II at 1 (Wash. Ct. App.). Because none of the judges

14

who sat to hear Guy's first appeal took part in hearing this appeal, we deny his motion as moot. Even if not moot, an objective look at the record does not show any bias on the part of Judge Penoyar, the one judge from the original panel remaining on the bench at the time we heard Guy's appeal, and there is no cause to recuse him.

## IX. ATTORNEY FEES

As discussed, we have previously affirmed the trial court's award of fees to the trust and estate, and we decline to revisit that decision despite Guy's request that we do so. Guy also seeks reversal of fees awarded by the trial court in the interim between his first and second appeal, but we find no abuse of the trial court's discretion and affirm the fee awards.

In addition, Guy seeks fees on appeal. He appeared pro se and his suit has not benefitted the estate. Accordingly, we reject his request for fees. *In re Marriage of Brown*, 159 Wn. App. at 938-39; RAP 18.1; RCW 11.96A.150(1). The trust and estate also seek fees based on RCW 11.96A.150(1), RAP 18.1, and RAP 18.9. Because we reject Guy's claims, and because we do not believe that his claims benefitted the trust or the estate, we award fees to the trust and estate. As with our first opinion in this matter, we authorize the deduction of the fee award from any distribution due to Guy.

## CONCLUSION

We find no abuse of discretion or error of law in the trial court's decisions. We affirm its orders and fee awards, deny Guy's request for attorney fees on appeal, and grant the request of the trust and estate for an award of attorney fees on appeal. The awards of attorney fees

15

No. 44244-2-II

approved by this opinion may be deducted from any distribution due to Guy.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, A.C.J.

BJORGEN, A.C.J.

We concur:

Hunt, J.

HUNT, J.

Maxa, J.

MAXA, J.