[No. 54762-9. En Banc. July 15, 1988.]

Robert J. Folsom, et al, *Respondents*, v. The County of Spokane, et al, *Appellants*.

---

*Donald C. Brockett, Prosecuting Attorney,* and *Garald A. Gesinger, Deputy,* for appellants.

*Delay, Curran, Thompson & Pontarolo, P.S.,* by *Joseph P. Delay,* for respondents.

*Norm Maleng, Prosecuting Attorney for King County,* and *Kay Sirlin, Deputy,* on behalf of Washington Association of Assessors; *James A. Wolff* on behalf of Inland Northwest Chapter of American Institute of Real Estate Appraisers, amici curiae for appellants.

CALLOW, J.—This case concerns the proper method of assessing property subject to a long–term commercial lease.

We reaffirm our prior holding, *Folsom v. County of Spokane*, 106 Wn.2d 760, 725 P.2d 987 (1986), that both the lessor's and the lessee's interests should be valued by adding the capitalized value of the contract rent to the present value of the leasehold bonus.

## FACTS

The underlying facts are undisputed and are set forth in the stipulated facts, dated March 27, 1987, and in the trial court's findings of fact and conclusions of law, dated April 9, 1987, generally, as follows:

Plaintiffs are the owners of real property described in the attached Exhibit "A".

The aforesaid real property consists of a K–Mart store and miscellaneous rentals in the North 6600 Block of Division Street, in the City of Spokane, Spokane County, Washington.

The K–Mart is the main anchor tenant at said location. The aforesaid real property is burdened and encumbered with a lease to K–Mart, as lessee, which commenced in 1966 and extends for 20 years, with three 5 year options to renew on the same terms and conditions.

As for the year of 1982, the Spokane County assessor determined the fair market value of the subject property to be $3,148,500. The owner determined the fair market value of the subject property for the year of 1982 to be $2,150,000.

Plaintiffs paid under protest to the treasurer of Spokane County for the year of 1983, the real estate taxes in the sum of $35,543.42.

Within the time limited by law, plaintiffs' appealed in July of 1982 the aforesaid 1982 assessment to the Spokane County Board of Equalization on the basis that the current rental income is in the approximate sum of $2.00 a square foot. The assessor assessed the subject real property on the basis that the current economic rent should be $4.00 per square foot. The plaintiff owners contend that the actual contract determines the value of the subject real property. The assessor contends that the economic rent controls the fair market value of the subject property. Plaintiffs sought to have determined that the fair market value of the subject real property should

be based on the actual rent (current rent income) result-ing in a market value of $2,150,000.00. The plaintiffs appealed to the Board of Tax Appeals pursuant to the provisions of RCW 84.08 et. seq. under docket No. 24023. The hearing was held on June 7, 1983. The Board of Tax Appeals of the State of Washington affirmed the decision of the Board of Equalization of Spokane County by final order dated December 5, 1983. Within the time limited by law, the plaintiffs commenced their action in the [Spokane County] Superior Court . . .

The Superior Court entered a summary judgment order which granted the plaintiffs' motion and reversed the deci-sion of the Board of Equalization of Spokane County and the decision of the Board of Tax Appeals. The court held:

That the fair market value of the subject real property should be based upon the actual rental income and not upon economic rent, and the Court [found] that the fair market value of the subject property for the year 1982 [was] . . . $2,150,000.00, and not as appraised by the assessor of Spokane County, in the sum of $3,148,500[.] . . . [T]he subject real property [was ordered] to be [assessed] by the Spokane County Auditor for the year 1982 at the sum of $2,150,000.00 . . .

. . . [The] plaintiffs . . . [were] granted judgment against the Defendant, County of Spokane, for the sum of $11,272.00 together with costs . . . Said judgment [to] bear interest as provided by RCW 84.24.070 at the rate of six (6) per cent per annum . . .

The trial court's decision was appealed to this court and resulted in *Folsom v. County of Spokane, supra* (*Folsom* I). *Folsom* I held, in brief, that the assessor's valuation ought to reflect the value held by both the lessor and the lessee. The court therefore affirmed the trial court's decision to capitalize contract rent, but remanded with directions to add the value of the "leasehold bonus" or "surrender value" of the lease. The court defined this as the "value enjoyed by the lessee when market rent rises above contract rent;" in other words, the amount the lessee would receive were he to sublease or assign the lease at a profit. *Folsom* I, at 768.

On remand, the County moved for summary judgment, based on the stipulated facts. In addition to the basic facts

quoted above, the stipulation contained the following sentences:

> Spokane County appealed the above summary judgment direct to the Supreme Court of the State of Washington. The Supreme Court of the State of Washington filed its opinion on October 2, 1986 and remanded the proceedings for determination of the assessment by including in the determination the "leasehold bonus". The Court in defining a leasehold bonus stated that this bonus is a value that the lessee enjoys when the market rent rises above the contract rent. The Supreme Court then refers to the formula in Koeppel & Kramer, [*Property Tax Assessments: Contract Rent Is Fair Market Rent, Or Is It?*,] 2 Estate Law Journal [561] at 573 [(1973)].

The stipulation then quotes the Koeppel and Kramer formula and continues:

> This is the proper method of valuation as determined in *Folsom v. County of Spokane,* 106 Wn.2d 760, 769 [725 P.2d 987 (1986)].

The trial court entered its findings of fact and conclusions of law determining the value of the parcel by applying the Koeppel and Kramer formula.

Following remand, the property owner also filed suit seeking to recover excess taxes paid in 1984, 1985 and 1986, which were determined by the same 1982 appraisal at issue in *Folsom* I. The trial court entered summary judgment in the owner's favor in this second case, inasmuch as the issues presented were identical to those presented in *Folsom* I. The County appealed both the remanded *Folsom* I and the 1987 case. This is the appeal of the consolidated cases (*Folsom* II).

## ISSUES

This case presents the following issues:

1. Does the stipulation as to the effect of the Koeppel and Kramer formula bind the County?

2. To what extent, if at all, should this court reconsider its holding in *Folsom* I?

3. If we reconsider that holding, what method of valuation is appropriate in a case such as this?

4. Are appellants entitled to recover their attorney fees?

## The Stipulation Does Not Control the Legal Question Presented

Folsom contends that a stipulation bars the County from arguing that the formula applied by the trial court was not proper. We cannot agree, in light of the long–standing rule that stipulations of law are not binding. The parties' dispute comes down to whether the formula applied on remand was the proper one to carry out the County's powers and duties under RCW 84.40.030. That statute provides in pertinent part:

> Basis of valuation—Leasehold estates—Real property—Criterion of value. All property shall be valued at one hundred percent of its true an fair value in money and assessed on the same basis unless specifically provided otherwise by law.
>
> Taxable leasehold estates shall be valued at such price as they would bring at a fair, voluntary sale for cash without any deductions for any indebtedness owed including rentals to be paid. . . .
>
> The true and fair value of real property for taxation purposes . . . shall be based upon the following criteria:
>
> (1) Any sales of the property being appraised or similar properties with respect to sales made within the past five years. The appraisal shall take into consideration political restrictions such as zoning as well as physical and environmental influences. The appraisal shall also take into account, (a) in the use of sales by real estate contract as similar sales, the extent, if any, to which the stated selling price has been increased by reason of the down payment, interest rate, or other financing terms; and (b) the extent to which the sale of a similar property actually represents the general effective market demand for property of such type, in the geographical area in which such property is located. . . .
>
> (2) In addition to sales as defined in subsection (1), consideration may be given to cost, cost less depreciation, reconstruction cost less depreciation, or capitalization of income that would be derived from prudent use of the

property. In the case of property of a complex nature, . . . or property not having a record of sale within five years and not having a significant number of sales of similar property in the general area, the provisions of this subsection (2) shall be the dominant factors in valuation. When provisions of this subsection (2) are relied upon for establishing values the property owner shall be advised upon request of the factors used in arriving at such value.

(3) In valuing any tract or parcel of real property, the value of the land, exclusive of structures thereon shall be determined; also the value of structures thereon, but the valuation shall not exceed the value of the total property as it exists.

RCW 84.40.030. The proper interpretation of this statute is a legal, not a factual, issue.

█ In their stipulated facts, the parties paraphrased the *Folsom* I opinion, stating that the assessment ought to reflect the value of the lessor's and the lessee's interests, including the leasehold bonus. They noted that our opinion cited the Koeppel and Kramer article. They then inferred that the formula proposed by the authors had been prescribed by the court as the proper method of valuation in this case. That is a proposition of law. It is the province of this court to say whether the parties' interpretation of *Folsom* I is correct. The parties' stipulation is not dispositive as to legal propositions.

In *Rusan's, Inc. v. State,* 78 Wn.2d 601, 478 P.2d 724 (1970) we considered whether four clothing stores were engaged in wholesaling so as to be subject to taxation under RCW 82.04.270(2). In overruling a previous opinion, the court wrote:

There is another, more significant, defect in the original majority opinion. Essentially, that opinion rests on the proposition that the parties herein—and particularly the state tax commission—have stipulated themselves out of court. Such a result, however, is not possible. Courts of law are not bound by parties' stipulations of law. *See* 50 Am. Jur. *Stipulations* § 5, at 607; 5 Am. Jur. 2d *Appeal and Error* § 712, at 158. The propriety of disregarding stipulations as to questions of law is considered

to be particularly clear where such stipulations are made in cases concerning a public issue. *North Platt Lodge v. Board of Equalization,* 125 Neb. 841, 252 N.W. 313, 92 A.L.R. 658 (1934). Most particularly, interpretation and application of tax statutes, including those relative to excise taxes, is a judicial function. In a litigated case, neither a taxpayer nor a department of government may irrevocably stipulate as to the meaning, interpretation or legal effect of a tax statute. *See Estate of Sanford v. Commissioner,* 308 U.S. 39, 84 L. Ed. 20, 60 S. Ct. 51 (1939). Such a process would be an undesirable if not dangerous public policy, for it would usurp the basic and traditional judicial function of the courts in the interpretation of tax statutes enacted by the legislature.

*Rusan's,* at 606–07. We fail to see any distinction in this case. Just as no taxpayer or government could stipulate to the meaning of RCW 82.04.270 in *Rusan's,* no taxpayer or government can stipulate to the meaning of RCW 84.40.030 here.

We determined the meaning of that statute in our previous opinion in this case. The County now asks us to reconsider and revise that holding. Whether that is proper turns on whether the prior decision is the law of the case.

## THE DOCTRINE OF LAW OF THE CASE

■ As noted, this is the second appeal of the 1983 case. Where there has been a determination of the applicable law in a prior appeal, the law of the case doctrine ordinarily precludes redeciding the same legal issues in a subsequent appeal.

It is also the rule that questions determined on appeal, or which might have been determined had they been presented, will not again be considered on a subsequent appeal if there is no substantial change in the evidence at a second determination of the cause. The Supreme Court is bound by its decision on the first appeal until such time as it might be authoritatively overruled.

(Citations omitted.) *Adamson v. Traylor,* 66 Wn.2d 338, 339, 402 P.2d 499 (1965); *Greene v. Rothschild,* 68 Wn.2d 1, 7, 402 P.2d 356, 414 P.2d 1013 (1965).

The court has held that the law of the case doctrine is discretionary, not mandatory. *Greene,* at 6, 8. This rule has been codified as RAP 2.5(c)(2).

> *Prior Appellate Court Decision.* The appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review.

*See First Small Business Co. v. Intercapital Corp.,* 108 Wn.2d 324, 332–33, 738 P.2d 263 (1987). Reconsideration of an identical legal issue in a subsequent appeal of the same case will be granted where the holding of the prior appeal is clearly erroneous and the application of the doctrine would result in manifest injustice.

> Under the doctrine of "law of the case," as applied in this jurisdiction, the parties, the trial court, and this court are bound by the holdings of the court on a prior appeal until such time as they are "authoritatively over-ruled." Such a holding should be overruled if it lays down or tacitly applies a rule of law which is clearly erroneous, and if to apply the doctrine would work a manifest injustice to one party, whereas no corresponding injustice would result to the other party if the erroneous decision should be set aside.

(Citations omitted.) *Greene,* at 10.

This court has reconsidered an issue in a second appeal in a case similar to this one. In *Pier 67, Inc. v. King Cy.,* 78 Wn.2d 48, 469 P.2d 902 (1970), *cert. denied,* 401 U.S. 911 (1971), the court had decided in a series of prior cases, known as the *Metropolitan Bldg. Co.* cases, that the assessment of a leasehold interest in nontaxable, state–owned property should reflect the lessee's equity in that property and that both the rent reserved and mortgage indebtedness should be deducted in making the valuation. However, there were two flaws in this approach. First:

> *Condemnation* valuation represents the lessee's *equity* in the leasehold; it is a non sequitur to say that it is its true

value for ad valorem taxation. Taxation of property at its value, without regard to the owner's equity, is an established principal of ad valorem taxation.

(First italics ours.) *Pier 67*, at 55. Second, in deciding that the lessee's equity should be valued:

The court left unmentioned the rule of RCW 84.04.080 that no deduction be allowed for indebtedness owed. It simply reiterated the logic of the first two cases: the taxable value was determined to be the lessee's *equity* or the amount in excess of his capital indebtedness.

The final opinion . . . attempted to resolve the incongruity between the prior *Metropolitan* cases and the prohibition of indebtedness deductions found in RCW 84.04.080. The court rationalized that allowing deductions for mortgaged indebtedness did not violate the statute; it merely provided an easy means to amortize the capital investments in improvements[.]

*Pier 67*, at 56–57.

When the *Pier 67* case first appeared before the court, it applied the rule of the *Metropolitan Bldg. Co.* cases. When *Pier 67* reappeared on a second appeal, the court reversed itself. In doing so the court considered the doctrine of law of the case.

It is not our intention to detract in any manner from the importance of the doctrine of stare decisis. The doctrine brings stability and continuity to the law; yet the magnitude of an error, spawned only 22 years after statehood, that permits private enterprise to minimize or escape taxation of leaseholds upon tax–exempt real property forces us to conclude that the court must again address itself to issues previously raised.

*Pier 67*, at 50–51. Because there was a statute that expressly prohibited what the court's prior holding permitted, the prior holding was clearly erroneous. The court therefore disregarded the doctrine of law of the case and decided the issue again, correctly.

The question before us now, therefore, is whether the *Folsom* I opinion is clearly erroneous.

## The *Folsom* I Opinion

We conclude that *Folsom* I is not clearly erroneous. The opinion was ambiguous in one respect, however. We clarify the ambiguity, but affirm the holding of our prior opinion.

*Folsom* I holds that both the lessor's and the lessee's interests should be valued in an assessment under RCW 84.40.030. The court determined that this should be done by calculating separate values for those two interests and then combining those values in a single assessment. The County and amici contend that this method violates the "unit assessment rule". They contend that only valuation by an estimation of "fair market value" complies with RCW 84.40.030.

The conclusion of *Folsom* I, that valuing both the lessee's and the lessor's interests does not in itself violate the unit assessment rule, is not clear error. The basic goal of assessment of leased property was stated by the court in *Folsom* I in this way:

> An estimation of the value of property subject to a lease focuses upon two major interests: (1) the interest of the lessor who owns the fee, and (2) the interest of the lessee occupying the leasehold. Further analyzed, the lessor's fee interest consists of (a) the right to receive contract rent, (b) the right of reversion, and (c) any right he might have to improvements at the end of the lease. The lessee's leasehold interest consists of (a) the right to occupy the leasehold, (b) the right to the difference between contract rent and higher market rent, and (c) any interest he might have in any improvements to the leasehold. Solis–Cohen, Jr., *Appraisal of Leaseholds,* in *Encyclopedia of Real Estate Appraising* 465, 473, 476–77 (1959).

(Footnote omitted.) *Folsom* I, at 764. Both parties and amici agree that this correctly states the goal in this case. However, the County contends that this court erred in adopting a methodology which separates, values and then recombines the lessee's and lessor's interests.[1]

---

[1] As noted in *Pier 67, Inc. v. King Cy., supra:*

First, the County argues that considering the interests of the lessee violates the requirements of RCW 84.40.030 and WAC 458–12–300 and –301, which prescribe assessments based on what a willing buyer would pay a willing seller, taking into account income available from "prudent use" of the property. The County contends that only the capitalization of fair market rent can produce the "intrinsic value of the property."

> The fragmentation of property interests and use of formulas to separately determine those interests will have results which are unfair and contrary to statute. Fragmentation of interests does not treat property subject to a lease in the same manner as equivalent property occupied by the owner, giving undue weight to contractual relationship not affecting the intrinsic value of the property.

Brief of Appellant, at 22. The County argues that: "Leases are simply contracts and do not change the value of real property."

The court in *Folsom* I rejected this argument because it ignores the realities of the market, thereby violating the "willing buyer–willing seller" standard.

> Even if a disadvantageous lease can be attributed to imprudence, the property's value must reflect what a willing buyer would pay; a willing buyer would not pay full market value for property burdened by a long–term lease at below–market rates.

*Folsom* I, at 767. The County does not show that this conclusion is "clear error."

---

1. The standards of valuation for assessing leaseholds are the same standards for valuing and assessing taxable property in general.

2. Leaseholds shall be valued at such price as they would bring at a voluntary sale for cash.

3. A taxable property may be appraised by a number of methods and the results of each are collated into a single figure representing the assessed value.

4. No single method of appraisal is mandatory.

5. The fair market value of a leasehold is to be measured by considering both benefits to be garnered from the use of a property over the term of the lease and the burdens placed on it, such as zoning ordinances, legal limitations on land use or restrictions in the lease itself.

■ The County also argues that the method of *Folsom* I violates the "unit assessment rule." As the court recently stated:

> Where private land is leased, the entire estate including the fee, the leasehold and any improvements thereon, is assessed and taxed as a unit with the burden of paying the taxes being a matter of contract between the lessor and lessee.

*Duwamish Warehouse Co. v. Hoppe,* 102 Wn.2d 249, 253, 684 P.2d 703 (1984).[2] The court heard and rejected the County's argument on this point in *Folsom* I. The court pointed out that the rule prohibits fragmenting taxation among several taxpayers holding various interests. It does not prohibit the separate valuation of those interests in the course of arriving at a single figure for the parcel as a whole.

The "unit assessment rule" has been succinctly stated by the United States Supreme Court in *Trimble v. Seattle,* 231 U.S. 683, 689, 58 L. Ed. 435, 34 S. Ct. 218 (1913):

> In ordinary cases the whole property is taxed and which party shall bear the burden is not a matter of public concern.

In *Alaska Land Co. v. King Cy.,* 77 Wn.2d 247, 461 P.2d 339 (1969) we considered whether it was proper for the assessor to assess the value of the land and the improvements separately and add the two values together to arrive at an assessed valuation of the property. We held that method was proper. In reaffirming the unit assessment rule in this context, we stated:

> We hold, therefore, that the tax assessor is required by the statutes to assess each parcel of real property with

---

[2]As noted in *Duwamish Warehouse Co. v. Hoppe, supra:*

1. A single tax is imposed on the entire estate when the fee is privately owned.

2. If there is any doubt as to the meaning of a tax statute, it must be construed against the taxing power.

3. Ordinarily, full and fair value means the amount a willing buyer would pay a seller who is willing but not obligated to sell.

4. Where private land is leased the willing buyer is contemplated to be purchasing the entire fee including leasehold and improvements.

the improvements erected thereon, on the basis of its market value, without deduction for indebtedness; *and that where the land is leased, it is not his duty to apportion the taxes between the lessor and the lessee.*

(Italics ours.) *Alaska Land,* at 254.

The unit assessment rule came into play in *Clark–Kunzl Co. v. Williams,* 78 Wn.2d 59, 469 P.2d 874 (1970). There, King County had attempted to tax certain improvements by the lessee of state–owned land as personal property. The court affirmed a permanent injunction against the County, invoking the unit assessment rule.

It is clear then that as to the six restaurants located on privately owned land, the county's attempt to identify the cost of the improvements as determining the taxable value of the leaseholds and to assess this value separately from the fee interest is contrary to the general plan of our property tax statutes. *The value, if any, of the improvements to the buildings should have been reflected in the assessments of the fee interests.*

(Footnote omitted.) *Clark–Kunzl,* at 63.

In short, the unit assessment rule prohibits multiple assessments on multiple taxpayers holding disparate interests in a single piece of land. Who will bear the tax burden is a matter for contracting between the holders of those various interests. The unit assessment rule concerns only the final outcome of the assessor's task: he should produce one assessment for one taxpayer. The rule does not preclude the separate valuation of multiple interests *in the course of* producing this single assessment. This was our holding in *Folsom* I, and the County has not offered any argument which would persuade us that the court's conclusion was clear error.

The County also argues that RCW 84.40.030 imposes "three clear mandates" on assessments. First, that all property should be assessed "on the same basis." The County concludes that this means that "all contractual relationships of the owner should be ignored and the fee valued as if the owner has not entered into any leases." However, the County offers no argument for this conclusion. In fact, the

statute states that property shall be taxed at 100 percent of its true and fair value in money "and assessed on the same basis." This general direction clearly does not require the court or the assessor to disregard particular uses to which specific parcels have been put. It is obvious that the so-called "willing buyer" component referred to in RCW 84.40.030 would take uses, burdens and benefits into consideration.

Second, the County argues that RCW 84.40.030(1) requires the assessor to take into account "political restrictions such as zoning as well as physical and environmental influences." Since this recitation does not specifically refer to leases, the County concludes leases should be disregarded in valuations. However, this list appears in the first subsection, which governs assessments based on comparable sales. It is therefore irrelevant to this assessment, which is based on capitalization of income, the method prescribed by subsection (2) of the statute.

Third, the County argues that RCW 84.40.030(2) requires the capitalization of income derived from "prudent use" of the property. The County concludes that the income which "would be derived from prudent use of the property" can mean only one thing—market rent. There is no argument offered for this conclusion, which the court clearly rejected in *Folsom* I.

> In our opinion, the term "prudent use" refers to the use to which the land is put, *e.g.*, retail space versus pastureland, as opposed to the amount of income that can be extracted from a particular tract of land being used for the purpose for which it is best suited. *See* WAC 458-12-330 (and cases cited therein). Accordingly, use of land is not necessarily imprudent simply because the owner receives less than market rent from his lessee.

*Folsom* I, at 763 n.2.

Finally, the County argues that the court erred in not according the assessor's valuation a presumption of correctness. The *Folsom* I court recognized that the assessor's valuation is entitled to such a presumption and that the

assessor should be accorded considerable discretion in determining property value for tax purposes. RCW 84.40-.030 establishes a presumption in favor of the assessor's determination which can be overcome only by clear, cogent and convincing evidence. However, the assessor's discretion is not unlimited. In this case, for example, a cost–based valuation was dictated by RCW 84.40.030(2), which provides:

> In the case of property of a complex nature . . . or property not having a record of sale within five years and not having a significant number of sales of similar property in the general area, the provisions of this subsection (2) shall be the dominant factors in valuation.

Similarly, it is within the power of this court to construe the "true and fair value" standard of RCW 84.40.030 and WAC 458–12–300 as requiring the assessor to take specific factors into account in the course of his assessments. Accordingly, the court held in *Folsom* I that while the assessor's valuation was entitled to a presumption:

> Nevertheless, we believe that, in valuing property subject to a long–term lease, contract rent should be presumed the proper base figure for valuation in the absence of clear, convincing evidence that market rent exceeds contract rent. If market rent exceeds contract rent, the appropriate method of valuation is to add the present value of the leasehold bonus to the capitalized value of contract rent.

(Citations omitted.) *Folsom* I, at 769–70. What we prescribed was not a hard and fast rule, but a factual inquiry to be conducted by the assessor to ensure that the realities of the marketplace were fully recognized in the assessment. The appraisal of property is, after all, an attempt by humans to establish the true value of property pursuant to legal guidelines. The method prescribed here left ample room for the necessary exercise of discretion on the part of the assessor. Following the passage just quoted, we said:

> However, if the now below–market lease originally was not entered into in a good faith, arm's length transaction, the assessor may ignore contract rent and base valuation

solely on market rent. Likewise, if a disadvantageous lease will expire by its terms within such a short period of time that a willing buyer reasonably can be expected to ignore the short–term burden on the property's income–producing capabilities, the assessor may rely solely on market rent. If the lease is subject to optional *periodic renewals, the assessor must exercise his judg-ment* in determining whether the lessee will exercise the option, and may ignore contract rent only if the lessee is unlikely to exercise the option.

*Folsom* I, at 770. In short, the presumption operates only after the assessor applies the method prescribed by statute, as construed. In the case of commercial property subject to a long term lease, that means the capitalization of contract rent with the addition of the lessee's interest in the lease-hold bonus. *Folsom* I, at 769.

Since the County fails to show clear error in the court's conclusion that both the lessee's and the lessor's interests should be valued, the court will not reconsider its holding in *Folsom* I. The question remains whether the formula adopted by the trial court to achieve the purposes stated in *Folsom* I was correct.

 The formula applied by the trial court did not carry out the intent of *Folsom* I. This is understandable since *Folsom* I could be misunderstood. The misunderstanding could have arisen from the following passages which appear to be inconsistent:

If market rent exceeds contract rent, the appropriate method of valuation is to add the present value of the leasehold bonus to the capitalized value of contract rent. *See* Koeppel & Kramer, 2 Real Est. L.J., at 573.

*Folsom* I, at 769–70.[3]

Accordingly, we affirm the trial court's order to the extent the court directed Spokane County to capitalize contract rent for valuation purposes, but reverse and remand the case with direction to add the present worth

---

[3]We discard the Koeppel and Kramer formula as discussed in *Folsom* I as not properly valuing the lessor's and the lessee's interests.

of the difference between the capitalized value of contract rent and market rent to the value obtained by the capitalization of contract rent.

*Folsom* I, at 769. It is undisputed that market rent exceeds contract rent in this case. Under the first, general rule, therefore, the property in question should be valued by adding the present value of the leasehold bonus to the capitalized value of the contract rent. The second quoted passage, however, is consistent with the general rule only if one assumes that the present value of the leasehold bonus is the same as "the present worth of the difference between the capitalized value of contract rent and market rent". That is not the case.

Ordinarily the leasehold bonus is considered to be the present value of the sum, over the life of the lease, of the annual difference between economic rent and contract rent. Youngman, *Defining and Valuing the Base of the Property Tax,* 58 Wash. L. Rev. 713, 726 (1983); *Encyclopedia of Real Estate Appraising* 475 (Friedman ed. 1959). However, our remanding instructions directed the trial court to discount the difference between the *capitalized* market rent and the *capitalized* contract rent. This was misleading because in calculating the leasehold bonus, there is no reason to double discount (*i.e.,* discount capitalized amounts).

While the parties and the trial court followed our specific remanding language, the opinion taken as a whole was ambiguous. The law of the case doctrine does not require us to refrain from clarifying this point. The general rule stated in *Folsom* I should control. The property should be valued by adding the present value of the leasehold bonus, arrived at by generally accepted techniques to the capitalized value of the contract rent.[4]

---

[4]*Folsom* I states, at page 764, that the assessment should reflect not only the value of the rent received by the lessor and the leasehold bonus of the lessee, but the reversion interest of the lessor. In remanding the case, however, we directed the County to add the contract rent (the lessor's interest) and the leasehold bonus (the lessee's interest). These directions do not mention the lessor's reversionary

We remand the cause to the trial court for the calculation of the value of the property. The assessor should, in utilizing a capitalization of market rent approach for appraising the property, consider the value of the fee simple to be the sum of the lessor's and lessee's interests, though the assessor need not appraise those interests separately to arrive at a value for the unit. The lessor's interests will consist of (a) the right to receive contract rent, (b) the right of reversion, and (c) the right, if any, of improvements at the end of the lease; the lessee's interests will include (a) the right to occupy, (b) the right to the difference, if any, between contract rent and a higher (if so) market rent, and (c) any interest in improvements at the conclusion of the lease. In any event, the sum of the parts cannot exceed or be less than the value of the whole. The ultimate appraisal should endeavor to arrive at the fair market value of the property as if it were an unencumbered fee.

We do not find the appeal of the County to be frivolous, but find the respondent property owners to be the prevailing party for the purposes of the assessment of costs. Each party shall bear its respective attorney's fees.

Remanded.

PEARSON, C.J., UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, GOODLOE, and DURHAM, JJ., and WILLIAMS, J. Pro Tem., concur.

Reconsideration denied December 29, 1988.

---

interest. This is inconsistent with the requirement that all interests of both the lessee and the lessor be calculated.

*Folsom* I did not provide for a separate valuation of the reversion because it calculated the lessor's interest by capitalizing the contract rent. When a capitalization method is used, as opposed to a discounted cash flow, normal practice does not dictate estimating or forecasting a reversion. B. Boyce & W. Kinnard, Jr., *Appraising Real Property* 438 (1984).