
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DIANE CHRISTIAN and CASEY CHRISTIAN, | ) ) ) | No. 37027-5-III |
| Respondents, | ) ) | |
| v. | ) ) | |
| ANTOINE TOHMEH, M.D., and "JANE DOE" TOHMEH, husband and wife, and the marital community composed thereof; PROVIDENCE HEALTH CARE, a Washington business entity and health care provider; HOLY FAMILY HOSPITAL, a Washington business entity and health care provider; ORTHOPAEDIC SPECIALITY CLINIC OF SPOKANE PLLC, a Washington business entity and health care provider; DOES 1-5, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Petitioners. | ) | |

FEARING, J. — This appeal raises the unique question of whether the claimant, after this court reverses dismissal of her lost chance theory in a medical malpractice action and remands to the trial court, may expand her action to a traditional causation theory because she finds a new expert that opines that the purported negligence of the

physician caused injury on a more probable than not basis. We answer in the affirmative and thereby affirm the superior court.

FACTS

This court previously reviewed this suit in *Christian v. Tohmeh*, 191 Wn. App. 709, 366 P.3d 16 (2015) (hereafter *Christian* I). We abbreviate those facts.

Diane and Casey Christian, wife and husband, brought suit against defendants Dr. Antoine Tohmeh and the Orthopedic Specialty Clinic of Spokane, PLLC (Clinic). Diane Christian was Dr. Tohmeh's patient. We refer to the plaintiffs solely as Diane Christian. Tohmeh was a physician employed by the Clinic. We refer to the defendants collectively as Dr. Tohmeh.

On December 5, 2005, Diane Christian underwent an open and invasive spinal procedure performed by Dr. Antoine Tohmeh, which procedure aimed at relieving chronic low back pain and weakness in her legs. After the surgery, Christian reported symptoms not experienced before. These symptoms included tingling and numbness in her feet, pain in her buttocks, an inability to urinate and defecate, and a loss of sensation in her vagina and perineum. Christian also reported muscle spasms that impeded her ability to perform physical therapy. On December 9, the hospital discharged Christian, and she was scheduled to see Dr. Antoine Tohmeh in four weeks. In the discharge note, Dr. Tohmeh recommended in-home nursing care to monitor Christian's urinary function.

On January 3, 2006, during a postoperative examination, Dr. Antoine Tohmeh concluded that Diane Christian's presurgery symptoms of thigh weakness and pain had resolved. Christian, however, reported to Dr. Antoine Tohmeh that she continued to suffer from an inability to void her bladder and from numbness in her left buttock, rectum, vagina, left leg, and right foot. Dr. Tohmeh prescribed her Cymbalta to assist with symptoms experienced in her left buttock and left leg.

On January 4, 2006, Diane Christian visited Dr. Michael Oefelein, an urologist recommended by Dr. Antoine Tohmeh. Oefelein concluded that Christian still experienced perineal numbness. Christian told Oefelein that she experienced frequent urination. Oefelein conducted an ultrasound which showed that Christian retained only 36 cc of urine after voiding, he concluded that her urinary retention was resolved. Dr. Oefelein instructed Christian to decrease her fluids and to return if she again had problems voiding her bladder.

During a February 7, 2006 appointment with Dr. Antoine Tohmeh, Diane Christian reported continued numbness of her left buttock, rectum, and vagina in addition to severe constipation. Tohmeh made referrals for a bowel workup and nerve conduction study on Christian's left leg. He also noted that that her symptoms could relate to inactivity, pain medications, and anesthesia.

A February 27, 2006 nerve study by Larry Lamb, M.D. detected no abnormality that would cause Diane Christian's complained of symptoms. The study did not

encompass the area of the cauda equina located at the bottom of the spine.

On March 16, 2006, Diane Christian returned to Dr. Antoine Tohmeh. Christian expressed her regret in having undergone the invasive surgery as her current symptoms resulted in more pain than her presurgery symptoms. At the appointment, Christian told Tohmeh that she believed she had cauda equina syndrome. The cauda equina, Latin for "horse's tail," is a bundle of spinal nerves and nerve roots in the lower back. The nerves of the cauda equina stimulate the pelvic organs, perineum, bladder, sphincter muscles, hips, and legs. Cauda equina syndrome constitutes a serious neurologic condition in which damage to the cauda equine causes loss of function of nerve roots in the lower spinal canal. Cauda equina syndrome results in severe back pain, numbness in the perineum, vagina, and anus, bladder and bowel dysfunction, sexual dysfunction, pain radiating into the legs, and gait disturbance. Dr. Tohmeh disagreed with the self-diagnosis.

In April 2006, Diane Christian saw physiatrist Vivian Moise for a second opinion. Dr. Moise agreed that Christian's symptoms were consistent with cauda equina syndrome. Further testing, according to Dr. Moise, confirmed the diagnosis.

PROCEDURE

On December 4, 2009, Diane Christian filed suit against Dr. Antoine Tohmeh for medical malpractice. Christian alleged in her complaint that Tohmeh knew or should have known of the significance of her postsurgical neurological symptoms and that he

4

violated the applicable standard of care by failing to provide immediate and emergency medical intervention to address her postsurgical symptoms. Christian also alleged that Dr. Tohmeh negligently or intentionally failed to order medical testing that would have more definitively diagnosed or ruled out cauda equina syndrome. The complaint did not identify whether Christian sought recovery under a traditional causation theory or a loss of a better outcome theory.

On February 16, 2011, Diane Christian filed a witness list disclosing that she had retained orthopedic surgeon Stanley Bigos as an expert witness. Dr. Bigos provided deposition testimony on June 24, 2013. In Bigos's deposition, he opined that Dr. Antoine Tohmeh's actions did not meet the appropriate standard of care. He further opined that Dr. Tohmeh lessened Christian's chances of a better outcome by 40 percent. Dr. Bigos could not give a higher reduction in the chance of a better outcome. He indicated that, because of the dearth of data on the subject of cauda equine, he could not provide a definitive opinion or an opinion on a more probable than not basis.

In February 2014, Dr. Antoine Tohmeh moved for summary judgment. In his memorandum, he argued that "any and all claims" should be dismissed as Diane Christian lacked evidence that surgical intervention for the alleged cauda equina syndrome would have "prevented" or "resulted in any improvement" of the alleged neurologic deficits. Clerk's Papers (CP) at 431. In a memorandum of authorities in support of his motion, Dr. Tohmeh argued that Diane Christian failed to present sufficient

5

expert testimony to establish a causal link between Dr. Tohmeh's conduct and her injuries. He suggested that a causal link must be established on a more probable than not basis. In a reply memorandum, Dr. Tohmeh asserted that Christian lacked evidence on a more probable than not basis of a causal link between the alleged deviation from the standard of care and her injuries. He then separately addressed a loss of chance claim and argued that Dr. Stanley Bigos admitted the claim was based on speculation.

Diane Christian asked the trial court to deny the motion for summary judgment. She presented argument specific to a lost chance claim and emphasized that expert testimony established that Dr. Antoine Tohmeh breached the appropriate standard of care and caused a loss of chance or loss of a better outcome. In May 2014, the trial court granted summary judgment "in total" for Christian's failure to meet her burden as to the standard of care or proximate cause. CP at 684.

Diane Christian appealed to this court. On appeal, Christian categorized her theory of recovery as a loss of chance claim. She framed the issue as:

> Whether competent medical testimony that states Dr. Tohmeh breached the standard of care in treatment of Ms Christian, which caused her at least a 40% loss of chance of a better outcome, is sufficient (if not necessary) to create issues of fact for a loss of chance claim to survive summary judgment.

Am. Br. of Appellant at 3, *Christian v. Tohmeh*, No. 32578-4-III (Wash. Ct. App. 2015). She did not argue recovery based on traditional causation.

No. 37027-5-III
*Diane Christian v. Antoine Tohmeh, MD*

In its 2015 ruling, this appeals court characterized the claim before it as a "lost chance of a better outcome" claim resulting from an alleged breach of the standard of care by Dr. Antoine Tohmeh. *Christian v. Tohmeh*, 191 Wn. App. at 711, 720, 729. This court determined that genuine issues of material fact existed which precluded summary judgment dismissal. This court reversed dismissal of "the Christians' cause of action for medical malpractice." *Christian v. Tohmeh*, 191 Wn. App. at 742.

Following remand and in December 2016, Diane Christian gave notice that she intended to to call neurosurgeon W. Bradford DeLong to testify as an expert. CP 809-10. During a deposition in August 2017, Dr. DeLong opined that, if Dr. Antoine Tohmeh had intervened by surgery when Christian complained of numbness in her vaginal area, Christian would not be suffering permanent residual symptoms. DeLong placed Christian's loss of chance at 90 percent. In other words, DeLong testified that Dr. Tohmeh's breach of the standard of care likely prevented Christian's full recovery.

In July 2019, Dr. Antoine Tohmeh brought a motion to dismiss and/or motion in limine arguing that this appeals court's decision foreclosed any argument under a traditional theory of proximate causation. Stated differently, Dr. Tohmeh contended that Diane Christian could not present testimony or recover damages based on an opinion that the violation of the standard of care likely prevented her recovery. Tohmeh emphasized that, in response to his 2014 summary judgment motion, Christian did not present

7

evidence to support a traditional causation theory and Christian appealed only the lost chance claim.

Diane Christian responded that only one medical practice cause of action existed and neither the superior court, nor this court, had barred reliance on a traditional causation theory. She suggested that Dr. Antoine Tohmeh caused lengthy litigation delays by its motion practices and that she should be able to benefit from an expanded opinion of causation based in part on new data on causa equina.

The superior court denied Dr. Antoine Tohmeh's motion to exclude evidence that any breach likely caused Diane Christian injury. Tohmeh petitioned for discretionary review, and this court granted discretionary review.

LAW AND ANALYSIS

On review, Dr. Antoine Tohmeh contends the trial court erred in failing to limit Diane Christian to a causation theory of reduced chance of a better outcome. In other words, Tohmeh argues that Christian should be precluded at trial from presenting evidence that any violation of the standard of care by him caused Christian injury on a more probable than not basis. Dr. Tohmeh asserts that, because of this court's decision in 2015, Christian is limited, by the law of the case doctrine, to a reduced chance causation theory and judicial estoppel precludes Christian's change in theory to a traditional causation theory. According to Tohmeh, Christian abandoned a claim based on traditional causation theory when she did not rely on traditional causation in response to

8

Tohmeh's 2014 summary judgment motion and when this court reviewed the case in

2015. We discuss the difference between a reduced chance of a better outcome theory

and a traditional causation theory before we separately address the law of the case

doctrine and judicial estoppel.

Lost Chance of a Better Outcome

The law distinguishes between a medical malpractice action wherein the claimant

relies on the traditional causation theory and one wherein the plaintiff depends on a lost

chance. Traditional tort principles require a plaintiff to prove that negligence likely led to

a worse than expected outcome. *Rash v. Providence Health & Services*, 183 Wn. App.

612, 631, 334 P.3d 1154 (2014). Under traditional tort principles, the plaintiff must

prove a loss of chance greater than 50 percent. *In re Estate of Dormaier ex rel. Dormaier

v. Columbia Basin Anesthesia, PLLC*, 177 Wn. App. 828, 846, 313 P.3d 431 (2013).

Consistent with traditional tort principles, the lost chance doctrine requires the

plaintiff to prove the defendant breached a duty owed to the patient, but the claimant need

not prove that he or she likely sustained injury by reason of the breach. Contrary to

traditional principles, the claimant prevails by showing the negligence proximately

caused the patient to lose a chance of survival or a better outcome. *In re Estate of

Dormaier ex rel. Dormaier v. Columbia Basin Anesthesia, PLLC*, 177 Wn. App. at 845.

In a claim for loss chance of a better outcome, the patient would have likely suffered a

bad result even without a medical provider's negligence, however, the provider's

9

negligence likely worsened the outcome. *Rash v. Providence Health & Services*, 183 Wn. App. at 631. In such a case, the plaintiff shows that the chance of a better outcome was reduced by 50 percent or less. *Rash v. Providence Health & Services*, 183 Wn. App. at 631; *In re Estate of Dormaier ex rel. Dormaier v. Columbia Basin Anesthesia, PLLC*, 177 Wn. App. at 846.

A lost chance claim is not a distinct cause of action but an analysis within, a theory contained by, or a form of a medical malpractice cause of action. *Christian v. Tohmeh*, 191 Wn. App. 709, 729 (2015). Thus, in *In re Estate of Dormaier ex rel. Dormaier v. Columbia Basin Anesthesia, PLLC*, 177 Wn. App. 828, 856 (2013), this court held that, at least in a wrongful death claim, the plaintiff need not expressly plead reliance on a lost chance theory of causation. We also held that the claimant may rely on both a traditional causation theory and a lost chance theory in the same suit. The lack of a need to plead the theory and the ability to assert both causation theories in the same lawsuit bolsters our conclusion that the law of the case doctrine and judicial estoppel do not preclude Diane Christian from changing her theory in midstream and on remand.

Law of the Case

When asserting the law of the case doctrine, Dr. Antoine Tohmeh forwards two principal arguments. First, he contends that Diane Christian needed to present any evidence she had, in response to Tohmeh's 2014 summary judgment motion, that Tohmeh caused her injuries on a more probable that not basis. The trial court must have

ruled, in response to Tohmeh's 2014 motion, that Christian lacked evidence to support a traditional causation theory since it dismissed Christian's action in total. In turn, the trial court was bound by its 2014 summary judgment ruling that dismissed any traditional causation theory because of lack of evidence. According to Tohmeh, Christian did not appeal the trial court's 2014 ruling with regard to traditional causation, and thus, under the law of the case, Christian may not ask the issue to be revisited now.

Second, Dr. Antoine Tohmeh argues that this reviewing court, in its 2015 opinion, reversed the trial court only as to the trial court's dismissal of Diane Christian's loss of chance theory. According to Tohmeh, the lack of a reversal of any traditional causation theory must be followed by the trial court under the law of the case doctrine.

Diane Christian agrees that she did not provide argument under traditional causation principles in response to the 2014 summary judgment motion. Christian agrees that this reviewing court only relied on a lost chance of a better outcome theory when ruling that her medical malpractice action survived a summary judgment motion. Nevertheless, she contends that she may still now prosecute her medical malpractice claim against Tohmeh under any theory of causation for which she submits competent evidence at trial. We agree with Christian.

Three main principles arise from the law of the case doctrine: (1) a trial court ruling maintains binding force during later stages of the trial (version 1), (2) an appeals court ruling carries conclusive effects at trial on remand (version 2), and (3) an appellate

court will ordinarily not reconsider its own rulings of law on a subsequent appeal (version 3). *Lodis v. Corbis Holdings, Inc.*, 192 Wn. App. 30, 56, 366 P.3d 1246 (2015). The law of the case doctrine, depending on the situation, can be mandatory or discretionary. *Lodis v. Corbis Holdings, Inc.*, 192 Wn. App. at 56. On the one hand, the remand rule forbids a lower court from relitigating issues that were decided by a higher court, whether explicitly or by reasonable implication, at an earlier stage of the same case. *Lodis v. Corbis Holdings, Inc.*, 192 Wn. App. at 56. On the other hand, the Court of Appeals may or may not, at its discretion, revisit an earlier decision that it issued in the same case. RAP 2.5(c); *Folsom v. County of Spokane*, 111 Wn.2d 256, 264, 759 P.2d 1196 (1988). Dr. Antoine Tohmeh seeks to apply all three versions of the law of the case doctrine.

We question the validity of version one, which promotes the binding force of trial court rulings during later stages of the trial. The last sentence of CR 54(b) declares:

> In the absence of such findings [for the entry of a final judgment on less than all claims in the case], . . . the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Thus, even if Antoine Tohmeh's trial court earlier dismissed any theory of Diane Christian based on traditional causation, the trial court could revise the ruling. Regardless, the trial court, in 2014, dismissed Christian's cause of action for medical malpractice, not any discrete theory of causation. Thus, the first version of the law of the case does not control.

12

We reject application of the second version of the law of the case principle for the same reason. This court, in 2015, did not rule that Diane Christian could not proceed under a traditional causation theory. We simply held that Christian possessed sufficient facts to litigate under a reduced chance of a better outcome theory and reversed the dismissal of the medical malpractice claim. As already discussed, there is only one cause of action for medical malpractice regardless of the causation theory or theories on which the claimant relies.

Dr. Antoine Tohmeh emphasizes the principle that the law of the case doctrine can apply to questions that could have earlier been decided on appeal. Under this rule, questions determined on appeal, or which might have been determined had they been presented, will not again be considered on a subsequent appeal without a substantial change in the evidence. *Folsom v. County of Spokane*, 111 Wn.2d 256, 263 (1988); *Cronin v. Central Valley School District*, 12 Wn. App. 2d 99, 111, 456 P.3d 843, *review denied*, 195 Wn.2d 1030, 468 P.3d 617 (2020). During the first appeal, Diane Christian could not have presented a question of recovery under a traditional causation theory because she then lacked evidence to support recovery. If she had such evidence, the trial court would have never granted the 2014 summary judgment motion, and this court would not have entertained an appeal. We find no case, and Dr. Tohmeh cites no case, that precludes a party from changing theories on remand if the party garners updated information.

Finally, we deny application of the third version of the law of the case. We issued no ruling in 2015 as to whether Diane Christian could recover under a traditional causation theory.

Judicial Estoppel

Dr. Antoine Tohmeh next contends that Diane Christian's theory of traditional causation should be dismissed on the grounds of judicial estoppel. He suggests that both the 2014 order on summary judgment and this court's 2015 decision operate to preclude an argument on traditional proximate cause principles. Christian responds that proving causation under a traditional causation theory does not conflict with forwarding a lost chance theory. She also contends that judicial estoppel is not appropriate within a single proceeding. We do not resolve Christian's second argument because we conclude that Christian's pursuing her medical malpractice claim under a traditional causation theory does not conflict with any position taken by her earlier in this litigation.

Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position. *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538-39, 160 P.3d 13 (2007). A clearly inconsistent position is one in which the positions are "diametrically opposed to one another." *Kellar v. Estate of Kellar*, 172 Wn. App. 562, 581, 291 P.3d 906 (2012). Stated another way, "to give rise to an estoppel, the positions must be not

merely different, but so inconsistent that one necessarily excludes the other." *Markley v. Markley*, 31 Wn.2d 605, 615, 198 P.2d 486 (1948).

As already analyzed Diane Christian's earlier prosecution of her cause of action under a reduced chance theory does not conflict with asserting traditional causation. A party may proceed with both causation theories in the same case and ask the jury to decide the case on whichever theory fits. *In re Estate of Dormaier ex rel. Dormaier v. Columbia Basin Anesthesia, PLLC*, 177 Wn. App. 828 (2013).

CONCLUSION

We affirm the trial court's denial of Dr. Antoine Tohmeh's request to preclude recovery under a traditional causation theory. We remand for further proceedings.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, J.
Fearing, J.

WE CONCUR:

_____, J.        _____, C.J.
Lawrence-Berrey, J.                          Pennell, C.J.

15