IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TERSULI CONSTRUCTION SERVICES, LLC, a Washington State limited liability company, and TRENT GABEL, a married man, | No. 83832-6-I |
| | DIVISION ONE |
| Respondents, | UNPUBLISHED OPINION |
| v. | |
| RYAN MILETICH and RACHEL MILETICH, husband and wife, and the marital community comprised thereof, and ARMATA CONSTRUCTION SERVICES , LLC., a Washington State limited liability company, | |
| Appellants. | |

SMITH, C.J. — This is the third appeal concerning the contentious end of Ryan Miletich and Trent Gabel's business relationship. After a bench trial, the trial court awarded damages to Gabel because Miletich violated the non-solicitation provisions concerning Tersuli's customers and employees. The court offset this award to account for payments Gabel owed Miletich. In an amended judgment after the first appeal, the trial court recalculated prejudgment interest on Gabel's award but not on the offset. We affirmed because Miletich did not timely challenge the judgment. He now attacks the court's prejudgment recalculation in the second amended judgment, which again calculates interest

Citations and pin cites are based on the Westlaw online version of the cited material.

only on Gabel's award and not on Miletich's offset. Because this issue should have been properly raised in Miletich's second appeal, we affirm.

FACTS[1]

Ryan Miletich and Trent Gabel co-owned and operated Tersuli Construction Services from 2009 until 2015, when a dispute arose. Miletich formed a competing company—Armata Construction Services—and agreed to sell his shares in Tersuli to Gabel for $350,000 and not to solicit Tersuli's customers or employees. Gabel paid Miletich $200,000 when they executed the May 2016 settlement agreement effecting these terms. The remaining amount was due before the end of that year. But in December 2016, Gabel refused to tender the outstanding $150,000, claiming that Miletich had broken his promise not to solicit Tersuli's customers and employees.

Gabel sued, initiating this lawsuit, and Miletich countersued. After a bench trial, the trial court found that Miletich had indeed "undert[aken] extensive and continuing efforts to funnel certain business relationships away from Tersuli to Armata" and thereby breached his fiduciary duty. It awarded Gabel $196,374.80 in lost profits, $159,941.00 in attorney fees, and $10,491.91 in costs. But it offset this award by $225,000. $150,000 of that offset accounted for the payment Gabel still owed Miletich for his shares in Tersuli. The remainder accounted for

---

[1] We have already described in greater detail the facts leading to the first appeal of this case in Tersuli Construction v. Miletich, No. 78906-6-I, slip op. (Wash. Ct. App. May 18, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/789066.pdf (Tersuli I) and to the second appeal in Tersuli Construction v. Miletich, No. 82238-1-I, slip op. (Wash. Ct. App. Nov. 29, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/822381.pdf (Tersuli II).

$75,000 Gabel would necessarily have expended to hire a new employee regardless of Miletich's breach of his obligations.

In this first judgment, the trial court calculated prejudgment interest at 12 percent on both the lost profits awarded to Gabel and on Miletich's $150,000 offset for the second payment. Because these damages occurred on different dates, however, the span of time over which the court calculated the interest differed. Gabel's award accrued interest between May 18, 2016, the date of the settlement agreement, and July 31, 2018, the date of the judgment. Calculation of prejudgment interest on Miletich's offset also ended on the day of the judgment, but it began later, on January 1, 2017, the day after the second payment was due.

Miletich appealed. He challenged several aspects of the trial court proceedings and prevailed on two: we reversed and remanded for the trial court to enter more detailed findings of fact supporting its attorney fee award, and we directed it to subtract Miletich's $75,000 offset from Gabel's award before calculating prejudgment interest, rather than after.

On remand, the trial court heard argument about the propriety of the fee award and made more detailed findings. Separately, in an amended judgment entered December 3, 2020, it effected our mandate and offset Gabel's award by $75,000 before calculating prejudgment interest rather than applying the offset after calculating interest as it had before. It proceeded to recalculate interest on Gabel's award so that it continued accruing through to the date of the amended judgment, rather than stopping at the date of the first judgment. As a result, the

amount of awarded interest increased from $51,906.24 to $65,402.73.[2] The court did not recalculate the prejudgment interest on Miletich's $150,000 offset, however, which remained $28,408.32. It provided no explanation for this discrepancy other than stating about the offset's prejudgment interest that "[t]hese amounts were not affected by the Court of Appeals' decision."

Miletich had not objected to the form of this judgment when it was proposed by Gabel. Once it was issued by the court, however, Miletich moved for its revision. He challenged the discrepancy between the prejudgment interest calculations on Gabel's award and his own offset for the first time in this motion, which the court denied.

Miletich appealed a second time. In addition to again challenging the trial court's award of attorney fees, he contested "the award, calculation, and rate of prejudgment interest on damages awarded to Gabel for lost profits" and "the calculation of prejudgment interest on the offset for the unpaid installment payment." We affirmed, concluding that Miletich's objections to the amended judgment's calculation of prejudgment interest had not been timely made and therefore not preserved for our review. We awarded fees on appeal to Gabel.

The parties returned to the trial court, where Gabel submitted a proposed second amended judgment. His proposed judgment incorporated our fee award. It also recalculated prejudgment interest once again. Interest on Gabel's lost

---

[2] This increase does not reflect the full scope of the difference, since the initial interest amount was calculated on a principle of $196,374.80 whereas the second interest amount was calculated on that number less Miletich's $75,000 offset.

profit award now extends through the date of the second amended judgment.[3] Interest on Miletich's $150,000 offset still runs only through the date of the original judgment. This time, Miletich objected to Gabel's proposed judgment and submitted his own, which calculates interest on the $150,000 offset through to the date of the second amended judgment. The trial court adopted Gabel's proposed order.

Miletich now appeals for the third time.

ANALYSIS

Miletich challenges the second amended judgment in three ways. He contends that the trial court's failure to calculate prejudgment interest on the $150,000 offset through the date of the second amended judgment is unsupported by the trial court's findings of fact and conclusions of law. He also contends that the trial court erred as a matter of law by calculating prejudgment interest on Gabel's award through the date of the second amended judgment without doing the same for the $150,000 offset. And he asserts, in the alternative to his second challenge, that Gabel's award should have been offset as of the date when the $150,000 payment was due, rather than on the dates of the various judgments' entries. Gabel counters that consideration of these issues is precluded because they could have been raised in previous appeals. We agree with Gabel.

---

[3] As Miletich points out, this phrasing is somewhat imprecise, though accurate enough for purposes of our review. The second amended judgment calculated interest through the date of the judgment's presentation, February 11, 2022, while the order was entered February 22, 2022.

The Law of the Case Doctrine

Under the law of the case doctrine, " '[i]t is . . . the rule that questions determined on [prior] appeal, or which might have been determined had they been presented, will not again be considered on a subsequent appeal if there is no substantial change in the evidence at a second determination of the cause.' " Folsom v. County of Spokane, 111 Wn.2d 256, 263, 759 P.2d 1196 (1988) (quoting Adamson v. Traylor, 66 Wn.2d 338, 339, 402 P.2d 499 (1965)). This doctrine promotes finality and judicial efficiency by " 'protecting against the agitation of settled issues.' " State v. Harrison, 148 Wn.2d 550, 562, 61 P.3d 1104 (2003) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988)). It helps discourage " 'indefinite relitigation of the same issue,' " helps " 'obtain consistent results in the same litigation' ," and " 'assure[s] the obedience of the lower courts to the decisions of appellate courts.' " Harrison, 148 Wn.2d at 562 (quoting 5 AM. JUR. 2D APPELLATE REVIEW § 605 (2d ed.1995)).

> The doctrine, originally a common law rule, has been partially codified:
>
> "The appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review."

Roberson v. Perez, 156 Wn.2d 33, 41-42, 123 P.3d 844 (2005) (quoting RAP 2.5(c)(2)). We may therefore use our discretion to revisit issues that might have been raised in earlier appeals. But because we do not wish to undermine the doctrine's purposes, we typically do so only if our earlier holding is clearly

erroneous and refusing to review an issue would result in manifest injustice. Folsom, 111 Wn.2d at 264.

Here, all of the challenges Miletich makes to the second amended judgment could have been made in previous appeals. Only one substantive change was made to the second amended judgment after the second appeal: the trial court added our fee award. The other modifications were merely new applications of decisions made at the time of the first amended judgment's entry—namely, calculating prejudgment interest past the date of the original judgment only on Gabel's award and not on Miletich's offset. As a result, each of the issues Miletich now raises was ripe for arguing in his second appeal. Miletich does not challenge the incorporation of the second appeal's fee award into the second amended judgment, the judgment's only novel ruling.

In fact, we expressly rejected consideration of his challenges to the calculation of prejudgment interest in his second appeal. Tersuli II, No. 82238-1-I at 13. We did so because Miletich had not preserved these issues for appeal:

> CR 59 [governing motions for reconsideration] does not permit a party to assert new issues that could have been raised before entry of an adverse decision. JDFJ Corp. v. Int'l Raceway, Inc., 97 Wn. App. 1, 7, 970 P.2d 343 (1999). And a trial court need not consider new or additional claims or evidence on a motion for reconsideration. Martini v. Post, 178 Wn. App. 153, 162, 313 P.3d 473 (2013).

Tersuli II, No. 82238-1-I at 12. Our decision was not erroneous. Nor does Miletich assert that it was. Instead, he focuses on whether the trial court erred in its prejudgment interest calculations in its second amended judgment. But because the issues he raises now could have been raised in his second appeal

7

had he properly preserved them, we apply the law of the case doctrine and do not conclude that the clearly erroneous exception asks otherwise.[4]

<u>Fees on Appeal</u>

RAP 18.1(a) allows us to award fees on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses." We previously awarded Gabel his reasonable attorney fees and costs on appeal because Miletich's breach of his fiduciary duty to Gabel allows for an equitable fee award. <u>Tersuli</u> II, No. 82238-1-I at 13-14; <u>see</u> <u>Green v. McAllister</u>, 103 Wn. App. 452, 468, 14 P.3d 795 (2000) (breach of fiduciary duty is grounds for equitable award of fees). Both sides request fees on appeal. Because Gabel has prevailed, we award him and Tersuli reasonable fees and costs on the same equitable basis.

We affirm.

_____
Smith, C.J.

WE CONCUR:

_____          _____
Hazelrigg, A.C.J.                                          Dwyer, J.

_____

[4] Had procedure been followed, Miletich and his attorneys would have had four opportunities throughout the life of this case to ask the trial court to apply prejudgment interest on both his offset and Gabel's award: (1) in an objection to Gabel's proposed first amended judgment; (2) in a motion to reconsider the first amended judgment; (3) in an objection to Gabel's proposed second amended judgment; and (4) in a reconsideration motion following the second amended judgment. Miletich's failure to raise the issue at the first opportunity impaired his ability to raise the issue again on later occasions.