IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of ISABELLE KUHLMEYER, | No. 81002-2-I |
| Respondent, | DIVISION ONE |
| and | |
| SEAN KUHLMEYER, | UNPUBLISHED OPINION |
| Appellant. | |

BOWMAN, J. — Sean Kuhlmeyer challenges several trial court orders entered following the dissolution of his marriage with Isabelle Kuhlmeyer. The "law of the case" doctrine precludes several assignments of error. Others are barred as untimely, unsupported by the record, or moot. The remaining challenges lack merit. We affirm.

FACTS

This is Sean's second appeal concerning his marital dissolution with Isabelle.[1] See In re Marriage of Kuhlmeyer, No. 78765-9-I (Wash. Ct. App. Jan. 21, 2020) (unpublished) (Kuhlmeyer I), https://www.courts.wa.gov/opinions/pdf/787659.pdf. We repeat the pertinent facts set forth in our prior opinion as contextual background for the issues we address below.

_____

[1] Though Isabelle has since changed her last name to Latour, we refer to the parties by their first names in this opinion and mean no disrespect in doing so.

Citations and pin cites are based on the Westlaw online version of the cited material.

Sean and Isabelle married in 2000, had a child together, separated in 2016, and in 2017, Isabelle petitioned for dissolution of the marriage. In January 2018, the parties agreed to arbitrate their disputes under chapter 7.04A RCW and "authorized the arbitrator to determine a final parenting plan, each party's income, a child support order, the division of assets and debts, a restraining order, and an award of attorney fees."[2] Following a two-day arbitration in May 2018, the arbitrator entered a comprehensive 153-page award that set forth findings of fact and conclusions of law, resolving all issues. Sean did not agree with any of the rulings, contending that the arbitration award was " 'a travesty of justice' " and " 'rife with errors.' "[3]

In June 2018, Sean moved to vacate the arbitration award, filed for bankruptcy, and demanded to relitigate all issues before the arbitrator; while Isabelle asked the trial court to affirm the nonfinancial issues resolved in binding arbitration. The trial court entered an order partially confirming the arbitration award, reserving resolution of financial issues pending Sean's bankruptcy; findings of fact and conclusions of law; and an order restraining Sean from contacting Isabelle for 60 months. The court also entered a final parenting plan under RCW 26.09.191 that restricted Sean's parenting time and his ability to make major decisions about the child based on Sean showing " 'no evidence of being able to stop his compulsively self-destructive litigation pattern, short of vindication, which h[e] is unlikely to get,' " and his abusive use of conflict " 'that

---

[2] Kuhlmeyer I, slip op. at 2.
[3] Kuhlmeyer I, slip op. at 2.

2

endangers and damages the psychological development' " of their child.[4]  The

court appointed Mollie Hughes to serve as case manager and directed Hughes to

conduct a six-month review of the parenting plan.  The court ordered Hughes to

summarize her review in a written report and to include her "recommendations, if

any, for elimination of or change in supervision, reduction or expansion of

residential time, and/or contact between the parties."

In July 2018, Sean filed a motion asking the trial court to "consider new

evidence of alleged misconduct by Isabelle's counsel in conjunction with his

motion to strike the arbitration award" and to disregard reports authorized by the

guardian ad litem (GAL) appointed for the child based on a grievance he filed

against the GAL.[5]  Isabelle "responded by asking the court for relief from Sean's

incessant and frivolous motions."[6]

After a hearing, the trial court found that Sean's "repeated filings

needlessly increased Isabelle's litigation costs" and that "his threats to continue

improper litigation were harassing and abusive."[7]

> Thus, in an effort to impede Sean's "ability to abusively use court
> filings and legal proceedings to harass" Isabelle, the court prohibited
> Sean from filing any more motions unless he submitted "a one-page
> statement regarding its subject matter" to the court and received
> approval to file the motion.[8]

The trial court noted that in the eight weeks between June 2 and July 31, 2018,

Sean had e-mailed the court 31 times, often seeking " 'legal advice on how to file

---

[4] Kuhlmeyer I, slip op. at 2-3 (alteration in original).
[5] Kuhlmeyer I, slip op. at 3.
[6] Kuhlmeyer I, slip op. at 3.
[7] Kuhlmeyer I, slip op. at 3.
[8] Kuhlmeyer I, slip op. at 3.

more motions, or to complain of some other, unrelated, situation,' " and had

" 'engaged in repetitive litigation that is harassing and abusive.' "[9]  The trial court

awarded Isabelle attorney fees, denied Sean's grievance against the GAL,

denied his motion to vacate the arbitrator's award, denied his motion for new trial,

and denied Sean's motion for sanctions against Isabelle's counsel.

In August 2018, Sean filed a notice of appeal, challenging several orders

entered by the trial court between February and July 2018.  Isabelle then filed a

motion for contempt, asserting various grounds.  The trial court found Sean in

contempt of court:

> Sean had "been warned in multiple court orders to follow the orders
> of this court" and . . . "[n]otwithstanding the warnings, [he] filed
> almost 500 pages of documents less than two court days before
> this hearing[,]" with the "vast majority of the content" of his materials
> asserting "frivolous claims."[10]

The trial court also denied Sean permission to file a motion to modify the

parenting plan, a motion for contempt against Isabelle, and a "motion 'regarding

personal property.' "[11]  The court denied Sean's motion to reconsider the

contempt order.

In September 2018, the bankruptcy court dismissed Sean's petition after

concluding that he filed the petition in bad faith and manipulated the bankruptcy

code to prevent resolution of the dissolution proceeding with Isabelle.  The

bankruptcy court summarized Sean's conduct as beyond egregious:

> "[T]he debtor [Sean] wants to use an asset in which [Isabelle] has a
> substantial economic interest to satisfy [Isabelle's] claims against

---

[9] Kuhlmeyer I, slip op. at 3 n.4.

[10] Kuhlmeyer I, slip op. at 4 n.6 (brackets in original).

[11] Kuhlmeyer I, slip op. at 4 n.7.

him, arising out of the marriage dissolution. While that is egregious under almost any circumstance, it is made even worse here by the additional facts that: (1) [Isabelle] has occupied the home and paid the mortgage since 2016; (2) [Isabelle] is exposed to the risk that she would be unable to take Washington State's $125,000 homestead exemption, to which she would be entitled but for this case; and (3) the debtor didn't file this case until after the arbitrator involved in the dissolution case concluded the home should be awarded to [Isabelle].[12]

In October 2018, the trial court denied Sean's numerous requests to file motions to reconsider and for contempt orders against Isabelle as either repetitive of motions that the court had denied before or having no merit on their face. Sean then filed a second notice of appeal, challenging various trial court orders entered between August and October 2018.

In January 2019, Sean filed a third notice of appeal, challenging the trial court's December 2018 findings and conclusions on financial issues, final order confirming the arbitration award and assessing sanctions against Sean, final dissolution degree, and final child support order. The trial court denied Sean's motion for a continuance and for a new trial as repetitive of past motions and denied his other motions as meritless.

Case manager Hughes completed her review and filed her report in August 2019. She stated that since the court's December 2018 orders, the parties' dispute about Sean's residential time "spiraled from bad to worse." Isabelle unilaterally cancelled multiple visits set forth in the parenting plan; second-guessed the visitation supervisor, who later resigned; refused to cooperate with Hughes; and filed a motion to have Hughes removed as case

---

[12] Kuhlmeyer I, slip op. at 4 n.8 (alterations in original).

manager.[13]  Meanwhile, Sean's persistent "legal wrangling" with Isabelle's attorney "served to incite and inflame the situation" and was "driven by obsessive thoughts of unfairness and victimization related to the withholding of visits with his child."  Hughes admonished Sean multiple times "for his behavior and set strict guidelines for communication, financial accountability and restraint in his filings."  Hughes also urged Sean to retain a family law attorney "to insulate him from his impulsive attempt at using the legal system to avoid his own culpability."[14]

Hughes reported that since December 2018, Sean had only one two-hour supervised visit with his child.  Hughes recommended a phased-in return of Sean's residential time.  She also described her multiple attempts to resign as case manager because the parties' ongoing turmoil "made it impossible for [her] to be effective."  But Hughes agreed to delay her resignation twice until after she completed her August 2019 report.

Isabelle then started an arbitration proceeding, as required by the parenting plan, to challenge Hughes' recommendations.[15]  Undeterred, the parties continued litigating their disputes in the trial court.  Isabelle applied for a writ of garnishment in the amount of $113,211.  Sean responded with a series of pleadings seeking to stay enforcement of the judgment, disgorge garnished funds, and claim an exemption.  On September 13, 2019, the trial court entered a

---

[13] Hughes' report states that the court denied Isabelle's motion to remove her as case manager, but neither the pleadings nor the order are in the appellate record.

[14] Sean, who is an attorney licensed in Washington, represented himself below and continues to do so on appeal.

[15] This arbitration has been completed, but any decision arising from that process is neither in the record nor an issue before us now.

partial judgment and order to pay the writ of garnishment and denied Sean's exemption claim.

Also in September 2019, Sean filed a "Motion to Modify the Parenting Plan, Immediately Reinstating the Parenting Plan Previously in Place," claiming that the parenting plan was not in the child's best interest and there was no need for him to establish a substantial change in circumstances.

In November 2019, Sean served a subpoena duces tecum on his child's school to produce all educational records and correspondence. He moved to waive the civil fees and surcharges and to proceed "in forma pauperis." Isabelle moved to quash the subpoena and requested an order clarifying the sole decision-making provision in the parenting plan.

In December 2019, the trial court granted Isabelle's motion to quash, ordered that "[n]o documents shall be disclosed under that subpoena," and clarified that Isabelle "shall continue to have sole discretion as to the child's health, medical and educational decisions in all regards." The court also found Sean did not meet his burden to establish adequate cause to hold a hearing on the motion to modify the final parenting plan and entered an "Order Denying Adequate Cause/Motion To Modify." The court denied Sean's motion to proceed in forma pauperis and stated in its order:

> Respondent is reminded of the court's order of July 9, 2018, allowing ONE MOTION PER YEAR, preceded by a request for PERMISSION TO FILE SUCH MOTION. It is still in effect. Thus, Respondent's list of upcoming motions (in his motion to proceed in forma pauperis) is not pertinent.

On January 8, 2020, Sean filed a notice of appeal, challenging the trial court's December 2019 orders.[16]

On January 21, 2020, we issued our opinion in Kuhlmeyer I, in which we affirmed the trial court's confirmation of the arbitration award and concluded (1) Sean's argument that the arbitrator was partial had "no merit" and (2) his claim that "the arbitrator refused to consider multiple declarations from 'people attesting Isabelle was making false claims,' and 'had substantial anger, drinking, and mental-health issues,' " was "not supported by the record."[17] We also rejected Sean's contention that the arbitrator erred by

> (1) refusing to acknowledge Isabelle's allegations that he committed domestic violence were false; (2) refusing to analyze Isabelle's dishonesty; (3) improperly analyzing the grounds to issue a restraining order against him; (4) wrongly imposing a 60-month, instead of a 12-month, restraining order; (5) failing to correct a finding of "bad faith" entered in the final orders that was never litigated in the arbitration; (6) failing to reprimand Isabelle's counsel for "using highly inflammatory language" and insulting him; (7) failing to award him "substantially equal" parenting time and improperly analyzing the statutory factors to impose limitations on his parenting time and decision-making authority; and (8) dividing the assets and debts inequitably.[18]

Ultimately, we held that Sean could not vacate the arbitration award under RCW 7.04A.230(1) because he had failed to satisfy his burden of proof.[19] We also affirmed "all of the [trial court's] orders entered in this case" between February

---

[16] Originally, Sean labeled this as a "Fourth Notice of Appeal" and sought to include review of the orders in Kuhlmeyer I. But, as noted in that opinion, we denied Sean "permission to amend the notice of appeal in No. 78765-9-I," denied him "permission to expand the issues in [appeal No. 78765-9-I] beyond those identified in [his] opening brief," and denied his request for any "other relief." Kuhlmeyer I, slip op. at 10 n.12. Instead, this court assigned Sean's January 2020 notice of appeal a new appellate cause number and commenced the current appeal.

[17] Kuhlmeyer I, slip op. at 6-8.

[18] Kuhlmeyer I, slip op. at 8 n.10.

[19] Kuhlmeyer I, slip op. at 9.

2018 and December 2018 because "Sean's claims of error [were] insufficiently briefed."[20]

Following Kuhlmeyer I, in spring 2020, Sean (1) submitted in the trial court a "request to file a Motion for Contempt" against Isabelle; (2) "repeatedly and without permission contacted" the trial court by e-mail, "inquiring as to the status of his motion"; (3) filed "copies of memos to opposing counsel and the case's arbitrator entitled 'Threats' to pursue further litigation"; and (4) filed an eight-page "Memo of Law on Parental Alienation."[21]  On May 8, 2020, the trial court denied Sean's request for permission to file a motion for contempt and entered an order warning Sean that his e-mails to the court and filing of frivolous pleadings "may be met with sanctions."  Sean sought review of this order in a "Second Notice of Appeal" filed in June 2020.[22]

## ANALYSIS

Sean asks us to "find error in the below proceedings" and "reverse and remand,"

> with orders to reassign the case to an experienced family law judge . . . for a complete review, including all judicial findings and outcomes, to ensure all rulings of the court and arbitrator comply with the law, and all challenged evidence meet standards required by the rules of evidence.

Isabelle asks us to dismiss Sean's appeals because they are untimely, previously

---

[20] Kuhlmeyer I, slip op. at 9-10, 4.

[21] Of all the submissions mentioned, only Sean's Memo of Law on Parental Alienation is in the appellate record.

[22] Sean's second notice is 15 pages of argument.  It includes 8 pages of "issues" he wants reviewed, states he is "in the process of preparing" claims in federal court against "various judicial officers" involved in his case, lists 3 pages of requested relief, and attacks the trial judge's qualifications.  But Sean does not attach "a copy of the signed order or judgment" involving any of these issues.  RAP 5.3(a).

litigated, and they violate the rules of appellate procedure.

Scope of Appellate Review

We first define the scope of our review by determining which orders and decisions are properly before us.

A.  Law of the Case

In these appeals, Sean continues to dispute the May 2018 arbitration ruling, attack the trial court's 2018 orders requiring him to obtain permission prior to filing additional pleadings, and challenge the court's 2018 dissolution orders. But we have already terminated review of those orders in Kuhlmeyer I and Sean did not seek review in the Supreme Court.

"Under the doctrine of 'law of the case,' as applied in this jurisdiction, the parties, the trial court, and this court are bound by the holdings of the court on a prior appeal until such time as they are 'authoritatively overruled.' " Greene v. Rothschild, 68 Wn.2d 1, 10, 414 P.2d 1013 (1966) (quoting Adamson v. Traylor, 66 Wn.2d 338, 339, 402 P.2d 499 (1965); Baxter v. Ford Motor Co., 179 Wash. 123, 127, 35 P.2d 1090 (1934)).  This doctrine is applied

> in order "to avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower courts to the decisions of appellate courts."

State v. Harrison, 148 Wn.2d 550, 562, 61 P.3d 1104 (2003) (quoting 5 AM. JUR. 2D Appellate Review § 605 (2d ed. 1995)).  Thus, questions that we decided in a prior opinion or that we could have decided if raised on appeal " 'will not again be considered on a subsequent appeal if there is no substantial change in the

evidence.' " Folsom v. County of Spokane, 111 Wn.2d 256, 263, 759 P.2d 1196 (1988) (quoting Adamson, 66 Wn.2d at 339).

In Kuhlmeyer I, we affirmed the arbitration award and all of the trial court orders entered between February and December 2018. Kuhlmeyer I, slip op. at 9-10, 4. Our holdings in Kuhlmeyer I are the law of the case. We thus adhere to our prior determinations and decline Sean's request to revisit them.[23]

### B. Untimely Claims and Undesignated Orders

Sean challenges the trial court's order quashing his subpoena duces tecum for the child's educational records.[24] But Sean failed to timely appeal that order. RAP 5.2(a) requires an appellant to file a notice of appeal within "30 days after the entry of the decision of the trial court that the party filing the notice wants reviewed." Here, Sean filed his notice of appeal on January 8, 2020, more than 30 days after the court entered the order to quash on December 6, 2019. See RAP 18.6(a) (computation of time). Nor did Sean ask us to enlarge the time to file his appeal and consider its merits. See RAP 18.8. Sean is not entitled to appellate review of the trial court's order granting Isabelle's motion to quash the subpoena.

Nor can Sean obtain review of the remaining orders and decisions that he failed to timely appeal. Sean asks us to review an August 2019 writ of

---

[23] While "[r]econsideration of an identical legal issue in a subsequent appeal of the same case will be granted where the holding of the prior appeal is clearly erroneous and the application of the [law of the case] doctrine would result in manifest injustice," Folsom, 111 Wn.2d at 264, Sean fails to show that Kuhlmeyer I was clearly erroneous or that manifest injustice results from applying the doctrine.

[24] Sean's briefing alludes to a December 2019 subpoena duces tecum for medical records, but that document is not in the record.

garnishment, a September 2019 partial judgment and order to pay the writ, and the trial court's September 2019 denial of his request for an order to show cause for a contempt hearing against Isabelle. But Sean did not appeal any of these decisions within 30 days of their entry. RAP 5.2(a). Sean's January 2020 notice of appeal also did not designate any of these decisions for our review. RAP 5.3(a)(3) requires that a notice of appeal "designate the decision or part of decision which the party wants reviewed."

C. Inadequate Appellate Record and Briefing

Sean also appealed and designated the May 2020 order denying him permission to file a motion for contempt. But we cannot review this order because the record does not include a copy of Sean's request for permission to file the motion. It is the appellant's burden to provide a sufficient record to review the issues raised on appeal. RAP 9.1; In re Marriage of Haugh, 58 Wn. App. 1, 6, 790 P.2d 1266 (1990). Sean has failed to satisfy his burden. Without Sean's request for permission to file the motion for contempt and any related pleadings, we are unable to fully appreciate the procedural background or discern the basis for the trial court's denial. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) (issues raised but not in the record cannot be considered on appeal)

Additionally, even if the request for permission were in the record, Sean has failed to support this claim with authority or argument. RAP 10.3(a)(6) requires parties to provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." Because we need not consider arguments that are not supported

by any reference to the record or by citation of authority, we decline to consider Sean's appeal of the May 2020 order denying him permission to file a motion for contempt. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

D. Mootness

In April 2020, Sean filed his Memo of Law on Parental Alienation to provide notice in the record that "April 25th is Parental Alienation Awareness Day." The trial court told Sean that the memo had "no bearing on this case" and was "not in response to any motion or request by the court." The court reminded Sean that "frivolous pleadings are an abuse of the court process and prohibited." Sean now asks that "this court read the entire eight-page memo." Because we can provide no further relief on this issue, we dismiss it as moot. In re Marriage of T, 68 Wn. App. 329, 336, 842 P.2d 1010 (1993) (a case is moot when the court cannot provide adequate relief to the parties and the issues are thus merely academic).

E. Appealable Orders

The scope of Sean's appeals is limited to the trial court's December 2019 orders denying his motion to modify the final parenting plan and denying his request to proceed in forma pauperis.

Parenting Plan Modification

Sean contends the trial court erred by applying the wrong legal standard in denying his request for a hearing on his motion to modify the parenting plan.[25] We disagree.

We review a trial court's order on modification of a parenting plan for an abuse of discretion. In re Marriage of McDole, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). A trial court abuses its discretion when it applies an incorrect legal standard. In re Marriage of Rostrom, 184 Wn. App. 744, 750, 339 P.3d 185 (2014).

RCW 26.09.260 and .270 govern the modification of parenting plans. In re Parentage of C.M.F., 179 Wn.2d 411, 419, 314 P.3d 1109 (2013). When seeking to modify an existing parenting plan, RCW 26.09.270 requires that a party first "submit together with his or her motion, an affidavit setting forth facts supporting the requested order or modification," and directs the trial court to "deny the motion unless it finds that adequate cause for hearing the motion is established by the affidavits."[26] But a court will not modify a parenting plan unless it finds that "a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child." RCW 26.09.260(1).

---

[25] The trial court treated Sean's motion to modify as a petition for "adequate cause to modify" the final parenting plan.

[26] "The primary purpose of the threshold adequate cause requirement is to prevent movants from harassing nonmovants by obtaining a useless hearing." In re Marriage of Adler, 131 Wn. App. 717, 724, 129 P.3d 293 (2006). "[A]t the very minimum, adequate cause under RCW 26.09.270 means a showing 'sufficient to support a finding on each fact that the movant must prove in order to modify.' " In re Custody of E.A.T.W., 168 Wn.2d 335, 347, 227 P.3d 1284 (2010) (quoting In re Marriage of Lemke, 120 Wn. App. 536, 540, 85 P.3d 966 (2004)).

A different process is triggered when a parenting plan is left "open." See Adler, 131 Wn. App. at 724-25. That is, when the trial court exercises its equitable power to defer a permanent decision on a parenting plan for a limited amount of time after entry of the decree. In re Marriage of Possinger, 105 Wn. App. 326, 336-37, 19 P.3d 1109 (2001). When a parenting plan is "open," the trial court's final decision follows the criteria for establishing a permanent parenting plan in RCW 26.09.187, not the substantial change in circumstances standard of RCW 26.09.260. Possinger, 105 Wn. App. at 337; see Adler, 131 Wn. App. at 725 ("Possinger establishes that at the time of dissolution the trial court has the authority to build in a review of the terms of the parenting plan.").

Here, Sean argues the trial court left the residential terms of the parenting plan "open" subject to case manager Hughes' review, so "the 'best interests' standard per RCW 26.09.187" applied to his motion. The record does not support his argument. The final parenting plan provides that the case manager will conduct a review "to assess [the child]'s progress in school and in therapy as well as to monitor both parents' compliance with their respective obligations provided the residential schedule Paragraph 8 has been followed." The plan requires the case manager to summarize her review in a written report to "be distributed to the parties and filed" in the trial court. It also directs Hughes to include in her report "recommendations, if any, for elimination of or change in supervision, reduction or expansion of residential time, and/or contact between the parties." Hughes completed her review and filed a report with her recommendations in August 2019.

In its order denying Sean's motion to modify the parenting plan, the court determined that the plan was no longer " 'open' " for review. It explained, "The Plan, entered June 25, 2018, is not 'open' and therefore not subject to a 'new' plan. The only 'open' aspect of the Plan when entered was review by a case manager. That has been completed." Because the parenting plan was no longer subject to Hughes' review and recommendation, the court correctly determined the plan was final and any modification to the plan is subject to the strict standards of RCW 26.09.260.[27] Sean did not support his motion with evidence of a substantial change in circumstances, so the court correctly determined that he failed to show adequate cause.

Sean fails to establish that the trial court applied an incorrect legal standard or otherwise abused its discretion in denying his motion to modify the parenting plan.

In Forma Pauperis

Sean claims the trial court erred by "refusing" to acknowledge his "devastated finances" in denying his GR 34 motion for waiver of filing fees and surcharges and by refusing to let him proceed in forma pauperis.

> Any individual, on the basis of indigent status as defined herein, may seek a waiver of filing fees or surcharges the payment of which is a condition precedent to a litigant's ability to secure access to judicial relief from a judicial officer in the applicable trial court.

GR 34(a); Jafar v. Webb, 177 Wn.2d 520, 523, 303 P.3d 1042 (2013) (holding in

---

[27] That the parties were allowed to arbitrate any disputes about the case manager's recommendations and have the arbitrator's decision later reviewed by the trial court does not change our analysis. The court left the parenting plan open only until the case manager filed her report, not until all appeals of that report were concluded.

a civil case that "GR 34 provides a uniform standard for determining whether an individual is indigent and further requires the court to waive all fees and costs for individuals who meet this standard"). We review a court's interpretation and application of GR 34 de novo. Jafar, 177 Wn.2d at 526, 528.

Here, Sean told the trial court, "I need this finding of in forma pauperis as a way of lightening the financial load on me, in the hopes that I can either begin to financially recover, or, that enough time passes so I can qualify for bankruptcy."[28] But the court denied Sean's motion "because there [was] no pending filing of a motion for which fees [were] due." It also explained, "In forma pauperis is not designed for and would not affect payment of child support, garnishment, etc. It is only to allow waiver of the fee / cost to file a motion."

Even if Sean established indigency, we conclude he was not entitled to the relief he requested. He did not have any pending motions or petitions for which the payment of court costs and charges was a prerequisite. Nor was it his intention to use the order of indigency to "secure access to judicial relief." GR 34(a). Rather, his clear objectives were to use the order in negotiations with the Internal Revenue Service, as leverage against "other creditors," and as a tool to manipulate a future bankruptcy. The court properly denied Sean's motion.

Attorney Fees and Sanctions

Both Sean and Isabelle request an award of fees on appeal under RAP 18.1 and RCW 26.09.140. After considering their arguments and relative ability

---

[28] Sean also states that he filed his motion "because it would represent a judicial finding of [his] poverty which would assist him in negotiating with other creditors including the [Internal Revenue Service]."

to pay, we exercise our discretion under RCW 26.09.140 and deny both requests for fees.  We also deny both parties' request to impose sanctions under RAP 18.9(a).  Sean's appeal was not " 'so devoid of merit that no reasonable possibility of reversal exists.' " In re Marriage of Greenlee, 65 Wn. App. 703, 710, 829 P.2d 1120 (1992) (quoting Chapman v. Perera, 41 Wn. App. 444, 455-56, 704 P.2d 1224 (1985)).  And we reject Sean's contention that his "appeal was **only** necessary because of Isabella's continued intransigence."

We affirm the trial court's orders.

Brennan, J

WE CONCUR: